Landis WILLIAMS, Jr. *v.* STATE of Arkansas

CR 95-322                                    906 S.W.2d 677

Supreme Court of Arkansas
Opinion delivered October 2, 1995

*Willard Proctor, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Landis Williams, Jr., appeals the judgment of the Pulaski County Circuit Court convicting him of the first-degree murder of Lamont Cullins and sentencing him to imprisonment for sixty years. The sole point of error raised in this appeal is the denial of appellant's motion for directed verdict. The motion was based on two grounds: the evidence of appellant's intent to cause the victim's death was insufficient, and the evidence established justification for appellant's act. Neither ground has merit and we affirm the judgment.

■■ A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Durham* v. *State*, 320 Ark. 689, 899 S.W.2d 470 (1995). When reviewing the sufficiency of the evidence on appeal, the appellate court does not weigh the evidence but simply determines whether the evidence in support of the verdict is substantial. *Young* v. *State*, 316 Ark. 225, 871 S.W.2d 373 (1994). Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or another. *Id.* In determining whether there is substantial evidence,

the appellate court reviews the evidence in the light most favorable to the appellee, and it is permissible to consider only that evidence which supports the guilty verdict. *Id.*

## PROOF OF APPELLANT'S PURPOSE

■ The premise of the first ground of appellant's motion is that the state was required to prove appellant acted with the purpose of killing the victim. Such proof was not required in this case. The statutory definition of first-degree murder pursuant to which appellant was charged by felony information provides that a person commits murder in the first degree if, with a purpose of causing the death of *one person*, he causes the death of *another*. Ark. Code Ann. § 5-10-102(a)(2) (Repl. 1993); *Henderson* v. *State*, 291 Ark. 138, 722 S.W.2d 842 (1987). The state's burden, then, was to prove that appellant, with the purpose of causing the death of another person, caused the death of the victim.

■ Arkansas Code Annotated § 5-2-202(1) (Repl. 1993) provides: "A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result[.]" The law is well settled that a defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the killing. *Robinson* v. *State*, 318 Ark. 33, 883 S.W.2d 469 (1994). The fact that the victim died of a single gunshot fired by appellant is uncontested. Three witnesses to the shooting, other than appellant, testified at the trial. Their testimonies reveal substantial evidence that, with the purpose of causing the death of the victim's cousin, Maurice London (also referred to in the record as "Maurice Lawson" and "Toby"), appellant caused the victim's death.

The first witness to the shooting, Henry White, the victim's former brother-in-law, aged twenty-three years, testified he was living with the victim and his family at 5027 Buford in North Little Rock on November 4, 1993, the day of the shooting. White testified that, on that afternoon, he was returning to the Buford residence in his vehicle when he noticed a vehicle following him that was driven by appellant and contained three passengers. White testified the passengers were "throwing up little gang signs and stuff like that out the windows." White testified he drove into the driveway of the Buford residence, whereupon appellant

asked if he (White) was "throwing gang signs" and White answered no. White testified that Maurice London, a cousin of the victim who was living at the Buford residence, also had words with appellant at that time.

White testified appellant and his passengers slowly drove past the Buford residence at least twice more that afternoon "looking towards us." White testified nine other family members were in the front yard. White testified that, at one point after appellant drove by, London asked why appellant kept trying to bother them, and London fired one or two shots in the air. White testified appellant's vehicle turned around and stopped in front of the residence whereupon appellant said: "Oh, y'all were shooting at me?" or words to that effect. White testified London replied: "[Y]eah, nigger, I was shooting at you[.]" White testified he then saw appellant go "into the drawer," point his gun and shoot. White testified he did not know where appellant aimed the gun. White testified he ducked, heard three shots and then saw the victim bleeding on the ground beside White's vehicle parked in the front yard of the Buford residence. White testified London then fired one more shot at appellant.

White testified that, at the time of the shooting, he was standing on the driver's side of his vehicle parked in the front yard, approximately two feet away from London who was standing on the front porch. White testified that when he last looked at the victim prior to the shooting, the victim was sitting on the back of White's vehicle. White testified that when appellant shot his gun, appellant's vehicle was in the street near a big tree in front of the residence.

The second witness to the shooting, London, aged eighteen years, testified that, when he observed appellant talking to White in the front yard on the day of the shooting, he (London) told appellant "to get off the front of my yard with that trouble[.]" London testified appellant drove past the Buford residence at least six times more that day. London testified that, after he (London) shot his gun twice into the air, he held it in his left hand pointing towards the porch upon which he stood. London testified that appellant then drove back before the residence, asked "[W]as y'all shooting at me?" and London replied, "[N]o, I didn't." London testified appellant then acted as though he was going to drive

away, but stopped his vehicle and fired three times. London testified: "I heard one bullet hit in front of me, hitting the house. I jumped back. A second bullet hit behind me, between the door panel." London testified the third bullet hit the victim, who was leaning against White's vehicle parked in front of the porch. London testified the victim was between him and appellant's vehicle. London testified appellant's vehicle was completely stopped when appellant fired the three shots and that appellant "was aiming his gun towards me." London testified that, after the three shots were fired, he (London) shot once more, aiming at appellant's vehicle that was then moving away.

The third witness to the shooting, April Cullins, a thirteen-year-old cousin of the victim, testified she was on the front porch of the Buford residence on the day of the shooting when someone told her to go inside. Cullins testified she went inside and, after a few seconds, looked out the front window and saw London, the victim, and White outside. Cullins testified she saw a vehicle come by, saw some "translating back and forth," and saw London shoot his gun "up in the air to scare them off." Cullins testified she saw the vehicle drive down the road and turn around, and that she heard more conversation. Cullins testified she saw appellant shoot. She testified: "[A]fter they got past the tree, they shot, and my cousin turned his head, and a bullet caught him in his left eye[.]" Cullins testified London stood on the front porch and the victim was standing against White's vehicle on the side facing the residence.

Appellant testified he followed White home on November 4, 1993 after White "started throwing up some gang signs," and that the two of them resolved the matter there without conflict. Appellant testified the second time he came by the Buford residence that day was after playing basketball when he heard shots and drove over to investigate. Appellant testified he saw White and the victim in the front yard and London on the front porch, asked White if he was shooting at appellant's vehicle, and heard the victim answer: "Yeah, I'm shooting at your car, nigger." Appellant testified he and the victim then exchanged obscenities and "a shot fired." Appellant testified he shot twice out the back window of his vehicle, without aiming at the victim or White or London, and then left.

Pulaski County Sheriff's Department Detective Terry Ward testified that the murder weapon, a 0.38-caliber automatic pistol, was recovered. Ward testified two fresh bullet holes were located on the Buford residence, one on each side of the front door. Ward testified the bullets were not recovered because they penetrated the walls of the residence too deeply.

■■ The evidence of the verbal altercations between appellant and London on the afternoon of the shooting, of the "warning" shots fired by London as appellant drove by, of London's armed presence on the front porch of the residence, of appellant's demand to know if he was being shot at, of the proximity of London's position on the porch to the fresh bullet holes in the door of the residence, of the proximity of appellant's vehicle to the residence at the time of the shooting, of the 0.38-caliber automatic pistol used by appellant, and of the victim's position between appellant's vehicle and London is substantial evidence that appellant caused the victim's death with the purpose of causing the death of London. Conflicts and inconsistencies in the evidence were for the jury to resolve, as factfinder, and not for the trial court to resolve on a directed verdict motion. *State* v. *Long*, 311 Ark. 248, 844 S.W.2d 302 (1992).

### PROOF OF JUSTIFICATION

■ With respect to appellant's assertion that the evidence established justification for his act, we observe the jury was instructed on self-defense, but chose not to accept the defense. Consistent with the fact that, on review of the denial of a motion for directed verdict, this court need only consider that evidence that supports the guilty verdict, and irrespective of appellant's evidence of justification, this court concludes the proof of appellant's guilt is substantial. *Banks* v. *State*, 315 Ark. 666, 869 S.W.2d 700 (1994). The trial court did not err in denying the motion for directed verdict.

Affirmed.