Bob SOLOMON *v.* STATE of Arkansas

CR 95-548                                           913 S.W.2d 288

Supreme Court of Arkansas
Opinion delivered January 22, 1996

180

*Stuart Vess*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DONALD CORBIN, Justice. Appellant, Bob Solomon, appeals the judgment of the Pope County Circuit Court convicting him of the first-degree murder of his spouse, Janice Solomon, and sentencing him to imprisonment for forty years. Jurisdiction is properly in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(2). Appellant admitted that he shot the victim, but argued that the shooting was accidental. Appellant raises five arguments

for reversal, among them that it was error for the trial court to refuse to exclude three of the state's witnesses from the courtroom pursuant to the witness-sequestration rule, Ark. R. Evid. 615. We agree and reverse for a new trial. We find appellant's other arguments are meritless, but discuss them for the benefit of the trial court upon retrial.

### *Witness-sequestration rule*

■ At the commencement of the trial, the trial court ruled that state's witnesses, Jennifer Patty, Peggy Barker, and Teresa Patty, the victim's daughters, could remain in the courtroom despite appellant's invocation of the witness-sequestration rule. Rule 615. The trial court stated that the victim's daughters were exempted from the witness-sequestration rule by Ark. R. Evid. 616, which provides that the victim of the crime, as well as the parent, guardian or custodian of a minor victim, has the right to be present during the trial notwithstanding Rule 615. As the state concedes, the trial court ruled in error since none of the victim's daughters was the victim of the murder and no minor victim was involved. *See Williams* v. *State*, 320 Ark. 67, 894 S.W.2d 923 (1995).

■ The state argues that the trial court's error does not warrant reversal, however, because appellant has failed to demonstrate prejudice. Appellant argues he was prejudiced by the fact that the victim's daughters were allowed to listen to the other testimony, thereby allowing them a clear opportunity to shape their testimonies to match the other witnesses. Prejudice is not presumed and we do not reverse absent a showing of prejudice. *King* v. *State*, 322 Ark. 51, 907 S.W.2d 127 (1995); *Wallace* v. *State*, 314 Ark. 247, 862 S.W.2d 235 (1993); *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984), *cert. denied*, 470 U.S. 1085 (1985).

■ Rule 615 expressly provides that "the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses[.]" We have stated that the purpose of Rule 615 is to expose inconsistencies in the testimonies of different witnesses and " 'to prevent the possibility of one witness's shaping his or her testimony to match that given by other witnesses at trial.' " *King*, 322 Ark. 51, 55, 907 S.W.2d 127, 129 (quoting *Fite* v. *Friends of Mayflower, Inc.*, 13 Ark. App. 213, 682

S.W.2d 457 (1985)). The state called thirteen witnesses in all, six of whom testified prior to the victim's daughters. The victim's daughters were not recalled to the stand.

Briefly summarized, the testimony of the state's six witnesses who testified before the victim's daughters is as follows. Attorney William F. Smith first testified that the victim was his former client, that part of his practice consisted of divorce cases, and that, approximately one month prior to the shooting, the victim inquired about his retainer for a divorce action and stated that she might be coming to see him. The next four witnesses, Nurses Paula McAlister and Becky McCain and Drs. Roxanne Marshall and Charles Woodrow Jones, Jr., each testified to attending the victim at St. Mary's Hospital emergency room in Russellville, where the victim was taken by appellant after the shooting. The sum of these witnesses' testimonies was that the victim was alert and that she stated that she and her husband had argued about a divorce, that her husband had shot her, and that it was no accident. Nurse McAlister also testified that the victim stated that she wanted to see her daughters. The state's sixth witness, Dr. Mark Myers, testified as to the details of the victim's gunshot injury which he observed as he performed surgery on the victim at St. Mary's. The victim died during the surgery.

Jennifer Patty, the victim's twenty-two-year-old daughter, next testified that she went to the emergency room because appellant called and told her that she was needed there, and that he and the victim were out target shooting when the victim stepped in the way and he shot her. Ms. Patty testified that her sister, Peggy, met her at the emergency room later on, and that they went to the waiting room where they found appellant. Ms. Patty testified that she heard appellant tell Pope County Sheriff Jay Winters in the waiting room that he had told the victim he was "gonna blow her head off."

Peggy Barker, the victim's eldest daughter, next testified that when she went to the emergency room one of the nurses let her see the victim. Ms. Barker stated that the victim took her hand and told her to "tell them" that she and appellant had been arguing and that appellant had shot her on purpose. Ms. Barker testified that she remembered talking to Pope County Sheriff's

Office Investigator James Hardy after the shooting and telling him that the victim had told her that appellant had shot her on purpose. Ms. Barker testified that appellant had told her that he had argued with the victim over a credit problem. Ms. Barker testified that she never told appellant's counsel that she knew appellant would not intentionally kill the victim. Ms. Barker also testified as regards numerous other matters that were not addressed by any witness who testified before her.

Teresa Patty, the victim's twenty-three-year-old daughter, next testified that, shortly after the shooting, appellant told her that he and the victim were arguing about a credit problem, that he got out the gun, that they were "arguing over the gun," and that he shot her, but had not meant to. Ms. Patty testified that she was the closest of her sisters to appellant. Ms. Patty's testimony did not reveal whether she was present at St. Mary's Hospital on the day of the shooting.

■ We find appellant has demonstrated prejudice. This case was decided by the jury upon the conflicting testimonies presented as regards the issue of appellant's intent when he shot the victim. It illustrates the need for the witness-exclusion rule to prevent the possibility of any of the victim's daughters from shaping her testimony to that of a preceding witness. *King*, 322 Ark. 51, 907 S.W.2d 127; *see also Fite*, 13 Ark. App. 213, 682 S.W.2d 457 (decided under the presumed-prejudice rule of law).

Accordingly, we reverse the judgment of conviction and remand for a new trial. The following points of asserted error are addressed since they are likely to arise on retrial.

### Sufficiency of evidence of intent

■ Appellant argues that the evidence was insufficient to prove that he acted with the purpose of causing the victim's death. In determining whether there is substantial evidence, we review the evidence in the light most favorable to the appellee, and it is permissible to consider only that evidence which supports the guilty verdict. *Williams* v. *State*, 321 Ark. 635, 906 S.W.2d 677 (1995). Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or another. *Id.*

Appellant testified that he shot the victim as they were driv-

ing in their 1984 Ford pickup truck on a state highway near Moreland on the afternoon of July 17, 1993. The evidence showed that appellant and the victim were seated as driver and passenger, respectively, when appellant fired a single bullet into the victim's chest with a Smith and Wesson semi-automatic nine millimeter caliber firearm. Appellant testified that, at the time of the shooting, he and the victim were arguing about a credit problem, that the victim had become very upset, and, that, with one hand, he retrieved the weapon, which he knew to be loaded, from the console between their seats to put the weapon beyond the victim's reach. Appellant testified that the victim simultaneously grabbed the weapon's barrel and it accidentally discharged. As noted above, appellant's story was contradicted by the testimony of the victim's emergency-room health-care providers who stated that she told them that appellant shot her on purpose.

Resolution of the conflicting versions of these facts rested with the jury. *Harris* v. *State*, 262 Ark. 680, 561 S.W.2d 69 (1978). Clearly, the jury did not believe appellant's version. There is substantial evidence to support the conviction for first-degree murder.

### Prior bad acts of the victim

Appellant also argues that proffered evidence of the victim's character, by testimony of specific instances of her prior violent conduct toward him, was erroneously excluded. Our review is limited to the proffered cross-examination testimony of state's witness, Sheriff Winters, that he heard appellant tell another law enforcement officer that the victim had pulled a gun on him during their previous arguments and, once, had gotten mad and almost shot off his ear. Ark. R. Evid. 103; *Stewart* v. *State*, 316 Ark. 153, 870 S.W.2d 752 (1994). Appellant asserts the excluded testimony was relevant to his defense of accident. Because appellant's defense was accident, rather than self-defense, the trial court excluded testimony of the victim's prior bad acts. Appellant argues that the proffered testimony was admissible as evidence of a pertinent trait of the victim's character, in light of his defense of accident, pursuant to Ark. R. Evid. 404(a), and as evidence of other acts by the victim that were relevant to proof of his intent on the day of the shooting, pursuant to Ark. R. Evid. 404(b). We need not address this argument

on its merits. Even assuming Sheriff Winters's excluded evidence was admissible under Rule 404, it was not admissible under Ark. R. Evid. 405, which governs methods of proving character.

■ Rule 405 generally limits proof of character to reputation or opinion testimony. However, pursuant to Rule 405(a), a character witness may testify on cross-examination as to relevant specific instances of conduct. *Wilburn v. State*, 289 Ark. 224, 711 S.W.2d 760 (1986). The abstract, however, reveals no evidence from Sheriff Winters, on direct examination, regarding the victim's character. Hence, the proffered evidence was not admissible under Rule 405(a) as it was beyond the scope of cross-examination. Ark. R. Evid. 611.

■ Rule 405(b) also permits proof of character by specific instances of conduct in cases in which character or a trait of character is an essential element of a charge, claim or defense. Such a character trait must be "an operative fact which under substantive law determines the rights and liabilities of the parties." *McClellan v. State*, 264 Ark. 223, 226, 570 S.W.2d 278, 280 (1978). Appellant does not satisfy this standard because the victim's violent character was not an essential element of the murder charge or of his defense of accident. As the trial court correctly ruled, had appellant's defense been self-defense, the result might have been otherwise. *Thompson v. State*, 306 Ark. 193, 813 S.W.2d 249 (1991). Appellant sought to use the proffered testimony circumstantially rather than as a direct substantive issue, and, therefore, it was not admissible under Rule 405(b). *McClellan*, 264 Ark. 223, 570 S.W.2d 278.

### Suppression of appellant's pre-arrest statement

Sheriff Winters testified: "[Appellant] said that he pointed the gun at her and said, 'I'm going to blow your head off'; but that he didn't mean it and that the gun just went off." Appellant argues his statement should have been suppressed because it was given before the *Miranda* warnings were administered. The trial court ruled that the testimony was admissible because appellant's statement was voluntarily given under circumstances that did not constitute a custodial situation that required prior *Miranda* warnings.

Appellant testified that he did not make the challenged statement.

The *Miranda* warnings were intended to inhibit abuse of the federal constitutional Fifth Amendment right against self-incrimination of a person by reason of custodial interrogation by law enforcement officers. *Stone* v. *State*, 321 Ark. 46, 900 S.W.2d 515 (1995). "In custody" means a person who is deprived of his freedom of action by formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Id.* In resolving the question of whether a suspect was in custody at a particular time, the only relevant inquiry is how a reasonable man in the suspect's shoes would have understood his situation. *State* v. *Spencer*, 319 Ark. 454, 892 S.W.2d 484 (1995).

On appeal, we make an independent determination of the voluntariness of a confession. *Trull* v. *State*, 322 Ark. 157, 908 S.W.2d 83 (1995). We do not reverse the trial court, absent a finding of clear error, recognizing that conflicts in the testimony are for the trial court to resolve. *Id.* Here, the record shows that appellant made the challenged pre-arrest statement in the hospital's waiting room after Winters had twice advised appellant that he was not there to take any statements and just wanted to locate and secure the weapon, and that, after the challenged statement was made, Winters left appellant unattended in the waiting room to locate the weapon, then returned to appellant in the waiting room approximately ten minutes later and verbally advised appellant of his *Miranda* rights. On these facts, we are not persuaded that the trial judge's ruling was clearly against the preponderance of the evidence.

## Mistrial

Appellant argues it was error to refuse his three motions for mistrial based upon the emotional displays of the victim's daughters in the presence of the jury. The first two motions related to incidents that occurred because of the Rule 615 violation and therefore will not arise on retrial.

The third motion was made on the third day of trial, during an in-camera proceeding that was conducted when the court reconvened following its lunch break after closing arguments.

Appellant moved for a mistrial on the ground that the victim's daughters had approached the jury in close proximity as they were escorted by the bailiff from the courthouse to a van to conduct them to lunch, and had created a scene by screaming "I want my momma" and crying. The bailiff, when questioned by the trial court, corroborated appellant's description of the scene. The bailiff also stated that he had seen no one trying to speak to the jury and that he had hurried the jury into the van. The bailiff stated that he had not seen the victim's family at the scene of the disruption before, but had seen appellant's family there every morning. The trial judge denied the motion, but stated that he would admonish the families not to engage in similar displays.

Appellant then informed the trial judge that two or three other bystanders, including Mr. John Lynch, who were friends and relatives of appellant, had observed the lunch scene and would testify in accordance with the bailiff. Subsequently, appellant filed a motion for a new trial and attached Mr. Lynch's affidavit that he had observed two of the victim's daughters "laughing and snickering and making light of the situation" after the bailiff had left with the jury.

We have held that emotional outbursts by the relatives of murder victims are not unusual and are difficult to control. *Venable* v. *State*, 260 Ark. 201, 538 S.W.2d 286 (1976). The trial court exercises a wide latitude of discretion in the control of the trial and resorts to the drastic remedy of a mistrial as a last resort. *Id.* The record, as abstracted, fails to show that appellant obtained any cautionary instruction to the jury. The only indication that the emotional display was extreme or was orchestrated was Mr. Lynch's affidavit. Clearly, the trial judge was in a superior position to evaluate the prejudicial effect of the display upon the jury and to evaluate the credibility of the witnesses, including Mr. Lynch, regarding the lunchtime incident. We conclude no abuse of discretion was committed by the trial court in denying appellant's third motion for mistrial.

The judgment is reversed on the basis of the Rule 615 violation and remanded for retrial.