Walter L. YOCUM *v.* STATE of Arkansas

CR 95-1095                                          925 S.W.2d 385

Supreme Court of Arkansas
Opinion delivered June 24, 1996

*Christopher O'Hara Carter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen. and Senior Appellate Advocate, for appellee.

ANDREE LAYTON ROAF, Justice. Walter L. Yocum, Jr., appeals from his conviction of criminal use of a prohibited weapon and sentence of eight years' incarceration. He contends that the trial court erred in 1) not declaring Ark. Code Ann. § 5-73-104 unconstitutionally vague in it contains no definition of a "bomb"; 2) not suppressing evidence obtained when he was searched after he was arrested, without basis, for public intoxication while he was inside a private residence; 3) giving an overly broad jury instruction which did not fit the allegations against him; 4) refusing to give an affirmative defense jury instruction; and 5) failing to dismiss the charge against him because there was no proof presented of the culpable mental state required for commission of the offense. We affirm.

On December 28, 1994, the Baxter County Sheriff's Office

responded to a call from the mobile home of appellant Yocum's mother. The call indicated that Yocum's mother needed help because Yocum was causing a disturbance at her home and had passed out. Deputy Sheriff John Booker was admitted by Yocum's mother who whispered "don't wake him up." Booker found appellant passed out on the kitchen floor. Booker testified that he detected a strong odor of intoxicants about Yocum, that kitchen utensils were thrown about on the floor, and that there appeared to have been a disturbance at the home. Yocum's mother also told Booker that Yocum had on his person a number of knives. Booker stated that Yocum's mother was very upset, and appeared scared. He further testified that he found four knives on Yocum, one strapped to each leg and two on his belt. After removing the knives, Booker testified that he took Yocum from the home and patted him down prior to placing him in a patrol car. During the patdown search, Booker discovered an object in Yocum's pocket which appeared to be a pineapple-type hand grenade with a fuse cord at one end.

John Miller, a bomb expert from the state police, was called in to examine the object. Miller testified that he broke it open and that it was sealed at both ends, had a fuse, and contained low explosive powder and shotgun type pellets. He further testified that the object had been made by removing the lighter parts from a novelty cigarette lighter, that he considered it a bomb, and that it was functional and capable of exploding and killing people. He also stated that it served no lawful purpose and was "not something for the Fourth of July."

A forensic chemist from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") testified concerning the components of the device. Agent Krista Truss testified that it had a grenade body with a pyrotechnic fuse extending to the outside and was sealed with epoxy. She testified that the fuse extended to the inside of the device, which contained smokeless powder and five shotgun pellets. She further stated that there was enough powder to explode the device. Another ATF agent testified that he classified the device as an improvised explosive grenade under federal law and that it would have exploded had it been lit. He stated that it had an effective range of fifteen feet and that persons within two to three feet could receive life threatening injuries if the device exploded.

Tommy Steen of the Baxter County Sheriff's Office testified that he talked with Yocum on December 30, 1994, two days after

his arrest, after first advising him of his *Miranda* rights. He stated that Yocum told him that the item was "just a cigarette lighter" and that he owned the device that was found in his possession.

Although Yocum was arrested for public intoxication, he was not charged with that offense. Yocum was instead charged by an information filed January 16, 1995 with one count of criminal use of a prohibited weapon, a class B felony, and three counts of carrying a knife as a weapon, a class A misdemeanor. The information provided that at the time of his arrest on December 28, 1994, Yocum had a grenade in his pocket and three knives on his person, and that at a later arrest on January 13, 1995, Yocum also had three knives, a butterfly knife, a knife which had been welded to a pair of brass knuckles, and a hunting type knife with a blade approximately ten inches long.

Yocum's motion to sever the misdemeanor offenses from the felony count was granted by the trial court. He was convicted after a jury trial of the single count of criminal use of a prohibited weapon.

### 1. Directed Verdict

For his fifth and final point of error, Yocum contends that the trial court erred in not granting his motion for directed verdict. Yocum essentially argues that the state failed to prove that he possessed the culpable mental state required for conviction of the offense of criminal use of a prohibited weapon, because he was passed out at the time of his arrest.

■■ A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Williams* v. *State*, 321 Ark. 635, 906 S.W.2d 677 (1995). Preservation of an appellant's right to freedom from double jeopardy requires a review of the sufficiency of the evidence prior to a review of trial errors. *Davis* v. *State*, 319 Ark. 460, 892 S.W.2d 472 (1995). Consequently, we address Yocum's challenge to the sufficiency of the evidence prior to considering his other assignments. of trial error. *Bynum* v. *State*, 318 Ark. 87, 884 S.W.2d 248 (1994).

■ When reviewing the sufficiency of the evidence on appeal, this court does not weigh the evidence but simply determines whether the evidence in support of the verdict is substantial. *Williams, supra.* Substantial evidence is that which is forceful enough

to compel a conclusion one way or the other and pass beyond mere suspicion and conjecture. *Drummond* v. *State*, 320 Ark. 385, 897 S.W.2d 553 (1995).

■■ In determining whether there is substantial evidence, this court reviews the evidence in the light most favorable to the appellee, and it is permissible to consider only that evidence which supports the guilty verdict. *Williams, supra.* Further, circumstantial evidence may constitute substantial evidence when every other reasonable hypothesis consistent with innocence is excluded. *Nooner* v. *State*, 322 Ark. 87, 907 S.W.2d 677 (1995). Whether a reasonable hypothesis exists is for the trier of fact to resolve. *Id.*

Arkansas Code Annotated § 5-73-104, entitled "Criminal use of prohibited weapons," provides in pertinent part:

> (a) A person commits the offense of criminal use of prohibited weapons if, except as authorized by law, he uses, *possesses*, makes, repairs, sells, or otherwise deals in any bomb, machine gun, sawed-off shotgun or rifle, firearm specially made or specially adapted for silent discharge, metal knuckles, or other implement for the infliction of serious physical injury or death which serves no common lawful purpose.

Ark. Code Ann. § 5-73-104(a) (Repl. 1993)(emphasis added).

■ This court stated in *State* v. *Setzer*, 302 Ark. 593, 791 S.W.2d 365 (1990), that the "Use of Prohibited Weapons" statute does not create a strict liability offense. Under the provisions of Ark. Code Ann. § 5-2-203(b)(Repl. 1993), where the statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required and is established only if a person acts purposely, knowingly, or recklessly.

■■ Here, there is substantial evidence, both direct and circumstantial, of Yocum's culpability, that he purposefully and knowingly possessed the prohibited weapon. Officer Booker testified that he discovered Yocum lying on the kitchen floor of his mother's home smelling of intoxicants, and that a disturbance had obviously occurred in the kitchen. Yocum had knives strapped to both legs and two on his belt. He was also in possession of a pineapple-type grenade. The base of the grenade was originally a cigarette lighter. Someone, however, had converted the cigarette

lighter to a grenade. The device had no recreational, industrial or commercial use. The device contained a low explosive filler powder, had a visible fuse sealed with epoxy, could be ignited and was capable of exploding and killing or injuring human beings. Although Yocum did not admit that the object was anything other than a cigarette lighter, he knew that he had it and admitted that he owned the object. Possession of a prohibited weapon is all that is required for commission of the offenses; the State need not show that Yocum used or intended to use the weapon. Consequently, we cannot say that the trial court erred in denying Yocum's motion for directed verdict.

## 2. Due Process

Yocum contends that the trial court erred by not finding that Ark. Code Ann. § 5-73-104(a) violates the Fourteenth Amendment requirement of procedural due process. He argues that the statute is impermissibly vague because it does not contain the definition of a "bomb" and consequently does not provide adequate warning of the conduct which it seeks to prohibit. This argument is without merit, for it overlooks the fact that Yocum was not charged with, nor convicted of possession of a bomb. He was charged with criminal use of a prohibited weapon. The information which was filed against him set out the statutory language contained in Ark. Code Ann. § 5-73-104(a) in its entirety. The information described the device found in Yocum's possession as a grenade. Although the prosecutor argued that the device was a bomb, and the witnesses for the State identified the object variously as a bomb and a grenade, the testimony of the State's witnesses also clearly established that the object was an "implement for the infliction of serious physical injury that had no common lawful purpose." Arkansas Code Annotated § 5-73-104(a) provides that the offense may be committed by possessing "any bomb, . . . or other implement for the infliction of serious physical injury or death which serves no common lawful purpose." As the testimony of the State's witnesses clearly established that Yocum possessed such an implement, we need not consider Yocum's due process challenge based on the lack of statutory definition of a bomb.

## 3. Suppression of Evidence

Yocum next argues that because the arresting officer had no basis to arrest him for public intoxication in his mother's

residence, the trial court erred in denying his motion to suppress the evidence seized in the search conducted after his arrest. In reviewing the trial court's ruling on a motion to suppress, this court makes an independent determination based on the totality of the circumstances and reverses only if the ruling is clearly against the preponderance of the evidence. *Nance v. State*, 323 Ark. 583, 918 S.W.2d 114 (1996).

Yocum's counsel raised the motion in a pre-trial hearing and again during a bench conference at trial and argued that Yocum was charged with public intoxication when he was not in a public place and that his arrest and search were therefore not valid. The trial court determined that the officers acted appropriately and denied Yocum's motion to suppress.

Arkansas Rule of Criminal Procedure 4.1 provides that "a law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed any violation of the law in the officer's presence." In *Crail v. State*, 309 Ark. 120, 827 S.W.2d 157 (1992), this court determined that misdemeanor possession was a violation of the law that took place in the presence of the officer and, consequently, the officer had reasonable cause to arrest appellant without a warrant. This court also affirmed the proposition that "an arrest shall not be deemed to have been made on insufficient cause . . . solely on the ground that the officer . . . is unable to determine the particular offense which may have been committed." Ark. R. Crim. P. 4.1; *Crail, supra.*

This court has held that reasonable cause to arrest without a warrant exists when the facts and circumstances within the officers' collective knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant in a man of reasonable caution the belief that an offense has been committed by the person to be arrested. *Williams v. State*, 321 Ark. 344, 902 S.W.2d 767 (1995). All presumptions are favorable to the trial court's ruling on the legality of the arrest, and the burden is on the appellant to demonstrate error. *Hudson v. State*, 316 Ark. 360, 872 S.W.2d 68 (1994).

We cannot say that the trial court's determination was clearly against the preponderance of the evidence. Officer Booker was summoned to the residence of Yocum's mother because of a

disturbance. He testified that she appeared scared and very upset because Yocum had been violent toward her. Yocum was passed out in the kitchen floor and the kitchen appeared to be in complete disarray. Under these circumstances, the officer had reasonable cause to arrest Yocum for criminal trespass for remaining unlawfully on his mother's premises. *See* Ark. Code Ann. § 5-39-203(Repl. 1993).

### 4. Overly Broad Jury Instruction

Yocum also argues that the trial court erred in giving the following instruction:

> Walter Yocum, Jr., is charged with the offense of criminal use of a prohibited weapon. To sustain this charge, the State must prove beyond a reasonable doubt that Walter Yocum, Jr., unlawfully possessed any bomb or other implement for the infliction of serious physical injury or death which serves no common lawful purpose.

Yocum objected at trial that the language "or other implement for the infliction of serious physical injury or death which serves no common lawful purpose" should be stricken because that language does not modify a bomb but describes other items not enumerated in the statute and for which Yocum was not charged. We agree that the clause Yocum complains of does not modify a bomb, but do not agree that Yocum was charged with possessing a bomb.

This court has repeatedly stated that if there is some evidentiary basis for a jury instruction, giving the same is appropriate. *Mitchell* v. *State*, 314 Ark. 343, 862 S.W.2d 254 (1993). The instruction given by the trial court in this case comes from AMI Crim. 3104 and mirrors the statutory definition of criminal use of a prohibited weapon set forth in Ark. Code Ann. § 5-73-104(a). The evidence presented by the state clearly supported giving an alternative instruction on the type of prohibited weapon possessed by Yocum.

### 5. Affirmative-Defense Instruction

Yocum next argues that the trial court erred in not giving an affirmative-defense jury instruction. The instruction he requested reads as follows:

> It is a defense to this statute that the defendant used, possessed, made, repaired, sold, or otherwise dealt in any of the

above enumerated articles under circumstances negating any likelihood that the weapon could be used unlawfully.

This instruction was taken directly from the Criminal Use of Prohibited Weapons statute, which provides that:

> (b) It is a defense to prosecution under this section that:
>
> . . .
>
> (2) The defendant used, possessed, made repaired, sold, or otherwise dealt in any of the above enumerated articles under circumstances negating any likelihood that the weapon could be used unlawfully.

Ark. Code Ann. § 5-73-104(b)(2)(Repl. 1993).

■■■ The law is clear that a party is entitled to an instruction on a defense if there is sufficient evidence to raise a question of fact or if there is any supporting evidence for the instruction. *Davis* v. *State*, 293 Ark. 472, 739 S.W.2d 150 (1987). Where the defendant has offered sufficient evidence to raise a question of fact concerning a defense, the instructions must fully and fairly declare the law applicable to that defense; however, there is no error in refusing to give a jury instruction where there is no basis in the evidence to support the giving of the instruction. *Purifoy* v. *State*, 307 Ark. 482, 822 S.W.2d 374 (1991).

■■■ In this instance, Yocum presented no evidence whatsoever to warrant the giving of the requested instruction. He suggests that his statement that all he had was a cigarette lighter and the fact that the object was created from a cigarette lighter was evidence that he believed it to be a novelty item and sufficient to justify the instruction. We do not agree. Further, the original commentary to § 5-73-104 states:

> Subsection (b)(2) is designed to permit a legitimate collector to possess a prohibited weapon, *provided he takes steps such as rendering the weapon inoperable to make criminal use unlikely.*

See 1988 Supplementary Commentary to Ark. Code Ann. § 5-73-104 (1995 Commentaries)(emphasis added). We cannot say that the trial court's refusal to give this instruction was in error.

Affirmed.

DUDLEY, J., not participating.