

Cite as 2015 Ark. App. 181

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-14-849

| | |
|---|---|
| | **Opinion Delivered** March 11, 2015 |
| DEMETRIOUS FLOWERS | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT [NO. CR-11-547] |
| APPELLANT | |
| V. | |
| | HONORABLE VICTOR L. HILL, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Demetrious Flowers appeals the revocation of his probation by the Craighead County Circuit Court. Appellant does not challenge the sufficiency of the evidence to support revocation of his probation. He raises two arguments in support of reversal, contending that the trial court erred (1) by denying him the right to confront one of the witnesses against him, and (2) by not sua sponte halting the proceedings to determine whether appellant was mentally fit to proceed. Appellant's first argument is not preserved for appellate review, and appellant's second point is not meritorious. Consequently, we affirm.

Appellant pleaded guilty in September 2011 to the crime of possession of a controlled substance with intent to deliver in exchange for a five-year probationary term. He agreed to abide by certain conditions during probation, including that he live a law-abiding life and commit no crimes. The State filed three petitions to revoke probation, alleging several

SLIP OPINION

violations of conditions, the last petition being amended in June 2014. Appellant was accused of committing criminal acts in separate episodes that occurred in March 2013, July 2013, December 2013, March 2014, and April 2014. The hearing on the petition for revocation was conducted on June 19, 2014.

As part of the State's case, it called Lisa McBroom to the stand. McBroom was the victim of two of appellant's alleged crimes committed on July 1, 2013, those being residential burglary and theft of property (a gun). McBroom testified that she lived in Jonesboro and knew appellant as "Dee." She said that Dee came to her door and knocked, asking to mow her yard and for a soda. When she turned to get him a soft drink, she said that appellant came into her home without permission, grabbed her forty-caliber Smith and Wesson gun from under the coffee table, and fled.

During appellant's attorney's cross-examination of McBroom, counsel told the trial judge: "Your Honor, he's wanting to ask her a question directly." The judge said no. Cross-examination proceeded by defense counsel. The transcript indicates that defense counsel paused to talk with appellant multiple times during this cross-examination. The transcript also indicates that the trial court recommended that if appellant had any questions to ask, he should pass those on to his attorney to ask on his behalf, which he did. No further objection or argument was made on this topic.

Appellant's first argument on appeal asserts that the trial court erred in denying appellant his Sixth Amendment right to confront this witness against him. The State contends that this constitutional issue is not preserved for appellate review, and we agree with the State.

2

An appellant is bound by the scope and nature of the objections raised at the trial-court level, and an appellant must attain a ruling from the trial court in order to preserve the issue for appeal. *Roston v. State*, 362 Ark. 408, 208 S.W.3d 759 (2005). This is true even for arguments that are constitutional in nature. *Id*. Nowhere did appellant raise an objection, much less a confrontation-clause violation, for the trial court to consider or upon which to rule. Thus, this argument is not preserved for appellate review.

In his second point on appeal, appellant argues that the trial court erred by not sua sponte halting the proceedings to determine whether appellant was mentally fit to proceed, citing Arkansas Code Annotated section 5-2-305. On appeal, appellant's attorney points to appellant's initial confusion about whether he was entitled to a jury in a revocation proceeding; his speaking out of turn; his identifying himself as "Brother Flowers" instead of using his given name; his sometimes rambling and inconsistent testimony; his request for mental-health help from the trial court; his statement that he considered suicide; and the trial court's remark at the end of the hearing that appellant had burned some brain cells due to long-term drug use. Although the State argues that this issue is not preserved for review for failure to raise it at the trial-court level, we address the merits because our supreme court has held that there can be extraordinary circumstances in which a trial court should sua sponte order a competency hearing. *See Britton v. State*, 2014 Ark. 192, 433 S.W.3d 856. We find no error in the trial court's failure to halt proceedings on its own motion.

According to Arkansas Code Annotated section 5-2-302, the State may not try, convict, or sentence a person who lacks capacity to understand the proceedings or assist in his

SLIP OPINION

defense. Arkansas Code Annotated section 5-2-304 requires a defendant to notify the trial court and the prosecutor at the earliest practicable time of any intent to put his fitness to proceed in issue. Arkansas Code Annotated section 5-2-305(a)(1)(B)(i) requires the trial court to immediately suspend any further proceedings in a prosecution if any party or the court raises the issue of the defendant's fitness to proceed. Section 5-2-305(a)(1)(B)(ii) requires a trial court to order a fitness-to-proceed examination if it finds there is reasonable suspicion that a defendant is not fit to proceed. Thus, the statute provides the framework and authority for the trial court to halt proceedings, but it does not mandate a halt unless the trial court finds reasonable suspicion to question the defendant's fitness.

Competency to stand trial turns on whether an accused has sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, and if he has a rational and factual understanding of the proceedings against him. *Ring v. State*, 2014 Ark. App. 169. A defendant in a criminal case is ordinarily presumed to be mentally competent to stand trial. *Id.* In *Pyland v. State*, 302 Ark. 444, 790 S.W.2d 178 (1990), our supreme court held that the decision whether to provide psychiatric assistance to one facing a revocation hearing must be made on a case by case basis. The supreme court further noted that although the person subject to revocation was entitled to due process, there was no entitlement to the full range of criminal trial safeguards because the trial court was not dealing with a person who had yet to be convicted. *Id.*

The test for determining whether a trial court should sua sponte order a competency hearing is whether there is substantial evidence that the defendant may be mentally

4

incompetent to stand trial. *Britton v. State*, 2014 Ark. 192, 433 S.W.3d 856. The only evidence before the trial court here regarding appellant's mental competence was his own testimony and behavior in the courtroom. In *Britton*, our supreme court was called upon to determine whether the trial court erred in not sua sponte halting a murder trial and having Britton mentally evaluated based on Britton's outbursts, agitation, irritability, aggressiveness, rambling testimony, and bizarre behavior. Britton's attorney did not raise any issue of mental incapacity during trial, nor did any expert or any witness at the trial. The supreme court held that although Britton's behavior was questionable, it did not rise to the substantial-evidence level such that the trial court was mandated to intervene and halt proceedings.

Here, appellant's behavior and comments do not rise to the level of Britton's, and like in Britton's case, there was no issue about his competency raised by his attorney or any witness. There was no evidence before the court that appellant was unable to consult with counsel or assist in preparing his defense or had the inability to understand the nature and object of the proceedings against him. As in Britton's case, the appellant's behavior may have been questionable, but it did not rise to the substantial-evidence level to require the trial court sua sponte to intervene and halt the proceedings. Having reviewed the record before us, and considering that appellant was able to testify on his own behalf and actively participate in assisting his attorney with questions for the witnesses, we simply cannot say that the circuit court erred here.

Affirmed.
ABRAMSON and HOOFMAN, JJ., agree.
*Paul J. Teufel*, for appellant.
*Dustin McDaniel*, Att'y Gen., by: *Rachel Kemp*, Ass't Att'y Gen., for appellee.