Cite as 2022 Ark. App. 183

# ARKANSAS COURT OF APPEALS
## DIVISION IV
No. CR-21-476

| | | |
|---|---|---|
| WILLIAM SEWARD | | Opinion Delivered April 27, 2022 |
| | APPELLANT | |
| | | APPEAL FROM THE YELL COUNTY CIRCUIT COURT, SOUTHERN DISTRICT [NO. 75SCR-18-39] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE JERRY DON RAMEY, JUDGE |
| | | AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

William Seward appeals the Yell County Circuit Court's revocation of his probation. On appeal, he does not challenge the sufficiency of the evidence. Instead, he argues that the court erred in denying his oral motion for a mental examination. For the following reasons, we affirm.

On October 4, 2018, Seward entered a negotiated plea of guilty in the Yell County Circuit Court to possession of drug paraphernalia. As part of the plea deal, the State nolle prossed two additional controlled-substance charges. He was sentenced as a habitual offender to a term of 120 months' probation. Among other terms and conditions of probation, Seward was not to commit a criminal offense punishable by imprisonment; to submit to any

nonresidential rehabilitative, medical, counseling, or psychiatric program deemed necessary by his supervising probation officer; and to pay a supervision fee of $35 a month.

On March 21, 2019, the State filed a petition to revoke Seward's probation because he was charged with the commission of a new felony offense, possession of a controlled substance; and a new misdemeanor offense, possession of a Schedule IV controlled substance in Conway County on or about February 6, 2019. On July 1, the State filed a motion to nolle prosse the probation-revocation petition.

On September 11, 2020, the State filed a second petition to revoke Seward's probation as a result of new charges that Seward received in Pope County on August 12, 2020: (1) felony offenses—two counts of possession of a controlled substance and one count of possession of drug paraphernalia; and (2) misdemeanor offenses—driving on a suspended or revoked license, driving without insurance, and possession of drug paraphernalia. Additionally, the State alleged Seward had violated the terms and conditions of probation because as of August 24, 2020, he was delinquent on his supervision fees in the amount of $385, and he had failed to participate in any substance-abuse treatment as directed by the probation office.

On November 18, the State filed an amended revocation petition to add an allegation that Seward also violated the terms and conditions of his probation by committing the following new felony offenses in Pope County on October 22, 2020: possession of a controlled substance and possession of drug paraphernalia. Arraignment on the probation-

revocation charges was held on May 6, 2021, and a revocation hearing was scheduled for June 3, 2021.

At the arraignment, the circuit court appointed an attorney to represent Seward and instructed him to "[s]tay in touch with [his attorney] and talk to [her]." Seward agreed, stating, "Yes, Your Honor." On June 3, the circuit court ordered a continuance due to the unavailability of a necessary witness for the prosecution and rescheduled the revocation hearing for July 1. The court again instructed Seward to remain in contact with his attorney, which he again agreed to do.

On July 1, 2021, the circuit court held a hearing on the State's amended revocation petition. At the beginning of the hearing, Seward's counsel asked for a continuance, stating, "There is information that I need to get from Mr. Seward that I was not aware of today that could impact this case." The court denied the motion, noting that the case already had been continued from June 3. Seward interjected, "It's about my health." Then he stated to his attorney, on the record, "You need to get a continuance." Immediately after this exchange, the court instructed the State to call its first witness, but Seward's attorney interrupted, "Judge, I think we have a plea agreement." The court responded, "I've got witnesses here. I am ready to move forward, Ms. Wright. It's 2 o'clock in the afternoon, we've been here all morning and we are just now getting--" Seward interrupted, "I want rehab."

The court continued, "I am going to leave it up to the State, it is the State's case. Do you want a few minutes to talk, fine, but I'm ready for trial." The deputy prosecutor then stated, "What I don't want to do, Your Honor, and what I'm concerned about is there's been

wish-washiness about whether we're going to . . . take a plea or not take a plea. And I don't want to delay this matter any further and have it not end up pleading."

Seward's attorney agreed with the State and asked Seward, "Are you going to take the plea agreement?" He replied, "Yes, ma'am." The court then granted a short continuance and instructed the parties to start the plea paperwork while it attended to other matters on the docket.

Later that day, the circuit court recalled the case. At that time, Seward's attorney informed the court of her intent to file a motion for a fitness-to-proceed examination, explaining that "after a conversation[,] there has been a question about Mr. Seward's fitness, that he is under mental care. He does not understand what I am doing." The court voiced its displeasure at the issue of Seward's fitness having been raised for the first time "at this late stage." Seward interrupted, "I just don't understand, I mean, I went to the nut house from the jail." Seward's attorney stated, "Judge, I think fitness stops everything." The court replied, "There are time issues on fitness and this is it."

Seward interjected again, "I don't understand." The court stated, "I've made my ruling," and then inquired whether the parties had reached a plea agreement. The deputy prosecutor informed the court they had not. The revocation hearing proceeded, during which Seward's probation officer testified that she went over the terms and conditions of probation with Seward, including that he was not to commit a criminal offense punishable by imprisonment. Additionally, the State introduced Seward's Pope County judgments of conviction showing that on April 12, 2021, he pleaded guilty to having committed the

4

offenses of possession of a controlled substance and possession of drug paraphernalia and his Conway County judgment of conviction reflecting that on May 15, 2019, he pleaded guilty to having committed the offense of possession of drug paraphernalia.

Seward testified that he "was under care for mental health," did not understand "what we're doing here today," and "didn't know this was even happening." When asked about his health problems, he stated, "I've got hepatitis C, I'm on stage four. There's only four. I found that out two days before I got caught in Russellville. And they just decided that it was probation that I should have." When asked what types of medication he was taking, he answered, "I take ten pills a day. Four of them is for my heart. The rest of them is for my body, my mind." And when asked if he had been diagnosed with "schizophrenia or anything like that[,]" he said, "Yeah. A lot of them, I don't remember what all--mental disorder."

On cross-examination, Seward admitted that he remembered pleading guilty in Conway County Circuit Court to possession of a controlled substance and drug paraphernalia, stating that he pleaded guilty to possessing "a baggie." And he admitted that he also remembered pleading guilty in Pope County in two criminal cases involving methamphetamine and a pipe. When asked whether he started "feigning this 'I don't understand anything'" only after he learned that he was "going to jail today under the negotiated agreement that we had with your lawyer[,]" he insisted that he did not understand and that he did not remember pleading guilty or going over the terms and conditions of probation in the present case. He admitted, however, that he understood he could not commit other crimes while on probation.

Seward then stated to the circuit court, "Your Honor, I went to get evaluated. I went to the nut house from jail, 11 days, I'm free. I just found out I was diagnosed, I was told it was drugs––I was terminal, stage four." The circuit court found that Seward had violated the terms and conditions of his probation by committing new criminal offenses,  revoked his probation, and sentenced him to prison for a term of five years.

The timely appeal is now properly before us. In two related points for reversal, Seward claims that the court erred by conducting the revocation hearing without suspending the proceeding, ordering a competency examination, and determining that he was fit to proceed. His argument is two-fold: (1) he contends the court erroneously denied his oral motion for a fitness-to-proceed examination for the "sole reason" that the motion was untimely; and (2) he contends the trial court should have sua sponte ordered a fitness-to-proceed examination.

We will reverse a circuit court's decision to proceed in a revocation proceeding without a competency examination only if the decision was clearly erroneous. *E.g.*, *Hardaway v. State*, 321 Ark. 576, 579, 906 S.W.2d 288, 290 (1995). The State maintains that the court did not violate Seward's due-process rights by failing to order a competency examination. We agree.

 At the outset, as to his oral motion for a competency examination, Seward narrowly construes the court's ruling as "solely based on timeliness." Arkansas Code Annotated section 5-2-327(1) (Supp. 2021) provides that "[a]ny party or the court may raise the issue of the defendant's fitness to proceed." However, Arkansas Code Annotated section 5-2-304(a) (Supp. 2021) mandates: "If a defendant intends to put his fitness to proceed in issue, he

6

must notify the trial court and the prosecutor at the earliest practicable time." Here, we hold that, given the facts before us, it was not brought to the court's attention in a timely manner.

The court is required to order a fitness-to-proceed examination when "it finds there is reasonable suspicion that a defendant is not fit to proceed." Ark. Code Ann. § 5-2-327(a)(2). "The test for determining whether a trial court should sua sponte order a competency hearing is whether there is substantial evidence that the defendant may be mentally incompetent[.]" *Flowers v. State*, 2015 Ark. App. 181, at 4–5, 458 S.W.3d 250, 252. Evidence is "substantial" if it raises a reasonable doubt about the defendant's fitness to proceed. *E.g.*, *Philips v. State*, 2021 Ark. App. 221, at 5, 625 S.W.3d 394, 397. "In determining the existence of a reasonable doubt as to competency, it is appropriate to consider any irrational behavior exhibited by the defendant, his demeanor in the proceedings, and any prior medical opinion on competence to assist in his defense." *Welter v. State*, 26 Ark. App. 75, 77, 759 S.W.2d 814, 815 (1988). Under these standards, the court's refusal to order, either upon Seward's oral motion or sua sponte, a competency examination was not clearly erroneous, and we accordingly affirm.

Seward appeared in court with the same attorney on at least two prior occasions only weeks before he requested a competency examination for the first time. Before that, he had appeared with the same attorney on at least five occasions in connection with his prosecution and conviction for the underlying felony offense and previous revocation proceedings. By his own admission, he learned of his purportedly terminal illness and went from jail to the

"nut house" where he was evaluated, treated, and released—all before his revocation hearing on July 1, 2021.

Seward was questioned on cross-examination about whether he was "feigning" his alleged inability to understand the proceedings. It was the court's responsibility to judge the credibility of his testimony vis-à-vis his eleventh-hour incompetency claim, and we will not disturb the court's credibility determination on appeal. *E.g.*, *Fritts v. State*, 2013 Ark. App. 404, at 4; *see also, e.g.*, *Hardaway*, 321 Ark. at 578–79, 906 S.W.2d at 289–90 (willful misconduct does not give rise to belief that a defendant is incompetent).

There was nothing before the circuit court, other than Seward's own self-serving assertion that he did not understand the proceedings, that gave rise to a reasonable doubt about whether his mental-health status prevented him from understanding the proceedings and assisting in his defense. As such, the court did not clearly err by proceeding with the revocation hearing without a fitness-to-proceed examination.

Affirmed.

HARRISON, C.J., and GRUBER, J., agree.

*Beth Wright*, Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Sr. Ass't Att'y Gen., for appellee.