SLIP OPINION



Cite as 2014 Ark. 192

# SUPREME COURT OF ARKANSAS

No. CR-13-815

| | | |
|---|---|---|
| RONALD A. BRITTON | | Opinion Delivered May 1, 2014 |
| | APPELLANT | |
| | | APPEAL FROM THE FAULKNER |
| V. | | COUNTY CIRCUIT COURT |
| | | [NO. 23CR-10-936] |
| STATE OF ARKANSAS | | HONORABLE CHARLES EDWARD |
| | APPELLEE | CLAWSON, JUDGE |
| | | AFFIRMED. |

**PAUL E. DANIELSON, Associate Justice**

Appellant Ronald A. Britton appeals an order of the Faulkner County Circuit Court convicting him of murder in the first degree and sentencing him to life imprisonment without parole. He argues that the circuit court erred by (1) failing to order a new competency hearing at the time of trial, (2) failing to grant a mistrial after Britton had an episode in front of the jury, and (3) requiring Britton to wear a stun belt, shackles, and handcuffs in order to remain in the courtroom after his outburst. We find no error and affirm.

Because Britton does not challenge the sufficiency of the evidence against him, a brief recitation of the facts is all that is necessary. *See, e.g., Fritts v. State*, 2013 Ark. 505, \_\_\_ S.W.3d \_\_\_. On August 14, 2010, Michelle Asher was found dead outside her home in Greenbrier, Arkansas, as a result of blunt force and sharp-force injuries. Britton became a person of interest and a BOLO (be on the lookout) was issued for him. The authorities

located him in El Paso, Arkansas.

The State formally charged Britton for the capital murder of Michelle Asher on August 16, 2010, and a jury trial commenced on February 19, 2013. Britton was found guilty of capital murder by a Faulkner County jury. The State waived the death penalty and, therefore, Britton was sentenced to life imprisonment without the possibility of parole. It is from that conviction and sentence that Britton now appeals.

Britton first argues that although he nor his counsel requested a competency hearing at the time of trial, the circuit court erred by not ordering a hearing sua sponte because reasonable doubt existed as to Britton's competence to stand trial. The State avers that the circuit court was not required to order a competency hearing because Britton had a factual and legal understanding of the proceedings against him, two prior medical opinions had found Britton competent to stand trial, and Britton was able to consult with defense counsel during the trial with a reasonable degree of rational understanding. After a review of the record, we simply cannot say that the circuit court erred.

The conviction of an accused person while he is legally incompetent violates due process. *See Jacobs v. State*, 294 Ark. 551, 744 S.W.2d 728 (1988) (citing *Pate v. Robinson*, 383 U.S. 375 (1966)). *See also* Ark. Code Ann. § 5-2-302 (Repl. 2013). In order to be competent to stand trial, a defendant must have the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense. *See Jacobs*, *supra* (citing *Drope v. Missouri*, 420 U.S. 162 (1975); *Speedy v. Wyrick*, 702 F.2d 723 (8th Cir. 1983)). A trial court should sua sponte order a competency hearing when

there is a reasonable doubt about the defendant's competency to stand trial. *See Jacobs*, *supra*

(citing *Campbell v. Lockhart*, 789 F.2d 644 (8th Cir. 1986)).

The Eighth Circuit Court of Appeals has explained the test for determining whether

a trial court should sua sponte order a competency hearing:

> Under the rule of *Pate v. Robinson*, . . . a due process evidentiary hearing is constitutionally compelled at any time that there is "substantial evidence" that the defendant may be mentally incompetent to stand trial. "Substantial evidence" is a term of art. "Evidence" encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is "substantial" if it raises a reasonable doubt about the defendant's competency to stand trial. Once there is such evidence from any source, there is a doubt that cannot be dispelled by resort to conflicting evidence. The function of the trial court in applying *Pate*'s substantial evidence test is not to determine the ultimate issue: Is the defendant competent to stand trial? Its sole function is to decide whether there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competency. At any time that such evidence appears, the trial court sua sponte must order an evidentiary hearing on the competency issue.
>
> . . . .
>
> Although the Supreme Court has not prescribed exact standards as to the quantum or nature of the evidence necessary to require a competency hearing, the Court has indicated that consideration of evidence relating to "a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial" is appropriate.

*Speedy*, 702 F.2d at 725–26 (citations omitted).

In the instant case, both the State's expert and Britton's expert agreed prior to trial that

although Britton did have a mental disease, bipolar disorder, he had no mental defect and was

fit to stand trial. Based on the fact that both experts agreed, the defense waived a hearing

regarding Britton's fitness to proceed on October 24, 2011, but reserved the right to later

litigate that issue at trial. The defense never requested that Britton be reevaluated. It is now

SLIP OPINION

Cite as 2014 Ark. 182

Britton's argument on appeal that the circuit court should have ordered a competency hearing sua sponte based on his behavior at the time of trial in February 2013.

Not one individual expressed a concern about Britton's competency *at the time of trial* — not his counsel, not an expert, and none of the lay witnesses. Therefore, the only "evidence" before the court regarding Britton's mental competence was his own behavior in his interactions with the court and in the courtroom. On the first day of trial, the circuit judge spoke with Britton before calling court to order. The court had been warned that Britton had been occasionally disruptive at prior proceedings, and the judge asked Britton to conduct himself in a proper manner during trial. Britton responded by saying, "My word is my bond" and "I will do my best and I will give you forewarning if the temperature rises. I will not disrupt your courtroom today." The circuit judge again spoke with Britton before trial on the second day to remind him to maintain good behavior and not to disrupt the proceedings. Britton seemed evasive when being asked how he was doing; however, later in the day, the judge spoke with him again about the stun belt he was wearing and reiterated that he needed to continue to behave himself. When Britton was asked if that was fair and if his answer was yes, Britton responded, "Same as it ever was, yes, sir. Fair is fair."

Later in the second day of trial, the record indicates that following a jailhouse informant's testimony for the State, Britton "caused a disturbance in the courtroom that required all bailiffs to subdue him," and he was removed from the premises. Britton was allowed to come back into the courtroom for the remainder of the proceedings; however, he was required to wear handcuffs and shackles. The medical examiner testified for the State that

4

SLIP OPINION

same day. During the medical examiner's testimony, Britton's counsel asked for a short recess because Britton was asking to leave and indicating that he was going to have another episode. In chambers, the circuit judge addressed Britton. Britton indicated that it was "just the emotions" and that he was "fine to proceed." After requesting his glasses and that he be allowed to look at the medical examiner and the screen in the courtroom during his testimony, Britton acknowledged that, as far as his behavior was concerned, that was his "last chance today."

Finally, Britton went against the advice of his attorneys and chose to testify in his own defense. Before calling the jury into the courtroom, defense counsel and the circuit court wanted to make a record that Britton understood that testifying was against the advice of his attorneys and that he understood he had the right to remain silent. The colloquy between the court and Britton at that time undeniably included some incoherent rambling by Britton. However, Britton's own expert, Dr. Robert Forrest, testified that he had met with Britton on February 4, 2013, about two weeks prior to trial, because it was Dr. Forrest's understanding that Britton had become more erratic and agitated in his behavior. Dr. Forrest stated that although Britton was clearly more impaired at that February meeting than he had been at a prior meeting, he was not as bad as he had been at their very first meeting. Dr. Forrest indicated that "it appeared that he was improving" and even though it took a lot of effort, "[Britton] was able to redirect and was able to answer the questions that [Dr. Forrest] asked."

Additionally, Britton took the stand moments after his rambling colloquy with the

circuit judge and was able to testify very coherently and answer the attorneys in a manner relevant to the questions posed. Britton asserted his innocence, claimed he had not seen Asher during the two days prior to her murder, and claimed that although he had been dropped off at her trailer the morning of the murder, Asher had not been home and he simply left. During his testimony, he declared, "I'm here today for the charge of Capital Murder. Of Michelle Nicole Asher . . . ." He also stated, "I was able to understand the questions that my attorney was asking – – for the better part, yes, sir. I mean – but I – but we can stretch questions all day long." Finally, Britton testified, "As to whether I'm telling the jury that I'm able to conform my conduct to meet the requirements of the law, everybody is, yes, sir. I am, yes, sir. I am completely capable. I believe that. I understand the difference between right and wrong, for the most part, yes, sir. I mean, who's to say what's right and wrong? It depends on what you're doing. State's 47 [the photograph of Michelle Asher's body], it's wrong. Nobody has a right to take a life." Taking all of the above into consideration, the circuit court was not unreasonable in believing that Britton had the capacity to understand the nature and object of the proceedings against him despite exhibiting some bizarre behavior.

There was also no evidence before the court that Britton was unable to consult with counsel or assist in preparing his defense. Although he did not always take the advice of his attorneys, as evidenced by his decision to testify, that is not evidence that he was incompetent. While his behavior was self-destructive at times, such as his outburst in the courtroom, there was no evidence that such behavior was out of his control. None of the defense attorneys representing Britton expressed to the court at the time of trial that they could not work with

6

or communicate with Britton. Furthermore, Britton's expert was specifically questioned at trial about Britton's behavior during the trial and his outburst. Defense counsel asked Dr. Forrest if he had any "clinical comment" on Britton's outburst. Dr. Forrest stated that he had observed Britton's behavior in court and that he couldn't provide a rationale for why Britton had that episode. He testified that individuals with similar illnesses are significantly more irritable, easily agitated, and aggressive. We conclude that being more irritable, agitated, and aggressive is not the equivalent of being incompetent to stand trial.

The main cases relied on by Britton, in which circuit courts were found at fault for failing to act on a possible competency issue, are distinguishable from the instant case. In the case of *Pate*, 383 U.S. 375, the defendant's counsel insisted throughout the proceedings that the defendant's present sanity was very much in issue, four witnesses expressed a lay opinion that the defendant was insane, and even the prosecutor suggested to the court that a doctor's testimony should have been sought to provide an opinion as to the defendant's sanity. It is clear that none of those circumstances existed in the instant case.

In *Drope*, 420 U.S. 162, the defense counsel moved for a continuance prior to trial because he asserted that the defendant was not a person of sound mind and should have further psychiatric examination. Additionally, the defendant's wife, who had been the victim in the case, testified at trial that she believed he was sick and needed psychiatric care. *See id*. During the course of his trial, the defendant shot himself and failed to appear for court. *See id*. His attempted suicide alone illustrated a degree of mental instability at the time of trial and also deprived the court of the opportunity to further observe his demeanor. *See id*. Again,

this case is not analogous to the one currently before our court.

The Eighth Circuit, in *Speedy*, 702 F.2d 723, remanded the case for an evidentiary hearing *to consider* whether a circuit court erred in failing to sua sponte conduct a competency hearing where the defendant's psychiatrist had opined during trial that the defendant was desperately sick, suicidal, and should be immediately hospitalized and that there had been other evidence of the defendant's irrational and violent behavior. Here, Britton's expert did not testify as to any incompetency at the time of trial. Dr. Forrest opined only that Britton lacked the capacity to conform his behavior to the requirements of the law at the time of the crime. While Britton asserts, both in his brief and through his counsel at oral argument, that certain witnesses testified about his abnormal behavior around the time of the crime, no expert, lay witness, or attorney opined that Britton's illness was causing him to be insane, suicidal, or incompetent in any way during the course of the trial.

Finally, Britton claims that his case is factually similar to the Eighth Circuit case of *Reynolds v. Norris*, 86 F.3d 96 (8th Cir.1996), in which the court concluded that the trial court erred by failing to grant a third competency hearing at the time of trial although two competency hearings had already been held prior to trial. However, he is mistaken. First, in *Reynolds*, defense counsel expressed concern to the court at the time of trial that the defendant was not competent to stand trial and requested a third hearing. *See id*. Again, Britton's counsel did not express any concern about his competency to the circuit court at the time of trial even though counsel had specifically reserved the right to do so. Second, Reynolds's testimony was that the Defense Department was involved in his case and he cited the Gulf

War, among other irrational things, as the reason for his being on trial. *See id.* Britton was able to cite exactly why he was on trial during his testimony. Finally, an expert, Dr. Moneypenny, specifically testified in *Reynolds* that he did not believe that Reynolds was fit and ready for trial and that he believed Reynolds could not provide substantive assistance. *See id.* Britton's expert did not express those concerns, even when questioned about Britton's behavior at trial and the outburst that he had in front of the jury.

In conclusion, this court cannot say that there was sufficient evidence before the circuit court to cause a reasonable doubt about Britton's capacity to understand the nature and object of the proceedings against him, to consult with his counsel, and to assist in preparing his defense. Therefore, the circuit court did not err by failing to stop trial and conduct a competency hearing on its own volition.

Britton additionally argues that after his outburst in the courtroom, during which he had to be tackled, restrained, and removed from the premises, the circuit court should have granted his motion for a mistrial. The State avers that this argument is without merit and that the circuit court did not abuse its wide discretion in denying the motion. We agree with the State.

This court has held that a mistrial is an extreme and drastic remedy that will be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when the fundamental fairness of the trial has been manifestly affected. *See Harrison v. State*, 371 Ark. 652, 269 S.W.3d 321 (2007). A circuit court has wide discretion in granting or denying a mistrial motion, and, absent an abuse of that

discretion, the circuit court's decision will not be disturbed on appeal. *See id.*

First, Britton has failed to demonstrate that his outburst was so prejudicial that justice could not be served by continuing the trial or that the fundamental fairness of the trial was affected. Furthermore, this court has held that where an appellant was responsible for an outburst in front of the jury, the circuit court did not abuse its discretion by failing to reward appellant's misbehavior with a mistrial. *See, e.g.*, *Morgan v. State*, 308 Ark. 627, 826 S.W.2d 271 (1992) (in which the defendant exposed himself to the jury and requested a mistrial). A defendant cannot be allowed to abort a trial and frustrate the process of justice by his own acts. *See id.* (citing *Terry v. State*, 303 Ark. 270, 796 S.W.2d 332 (1990)). Additionally, we have repeatedly held under the invited-error rule, that one who is responsible for error cannot be heard to complain of that for which he was responsible. *See id.* Finally, the circuit court here provided an admonishment to the jury and explained that Britton's conduct was not to be considered in determining his guilt or innocence. For these reasons, we cannot say that the circuit court abused its discretion by denying the motion for a mistrial.

Britton's final argument is that the circuit court erred by requiring him to be restrained for the remainder of the trial after his outburst in the courtroom because it violated his Fourteenth Amendment right to a fair trial as well as his Sixth Amendment right to adequately participate in his defense. We again agree with the State that this argument is without merit.

Britton failed to properly develop a convincing argument that the restraints prevented him from participating in his defense. He makes a conclusory statement in his brief that he was "hampered by his stun belt, shackles, and handcuffs." Neither conclusory statements,

nor allegations without factual substantiation are sufficient. This court will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *See, e.g.*, *Green v. State*, 2012 Ark. 347, ___ S.W.3d ___.

The United States Supreme Court has considered the issue of whether the use of restraints in some cases violates the Federal Constitution. In *Deck v. Missouri*, 544 U.S. 622 (2005), *abrogated on other grounds by Fry v. Pliler*, 551 U.S. 112 (2007), the Court concluded that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck*, 544 U.S. at 629. The Court in *Deck* recognized the "need to restrain dangerous defendants to prevent courtroom attacks [and] . . . to give trial courts latitude in making individualized security determinations." *Id.* at 632.

Our court has held that a circuit court may take such steps as are reasonably necessary to maintain order in the courtroom, especially in situations in which the criminal defendant has engaged in disruptive behavior, attempted escape, or is charged with violent felonies. *See Williams v. State*, 347 Ark. 728, 67 S.W.3d 548 (2002). In fact, this court has concluded that restraints are not per se prejudicial, and that a defendant must affirmatively demonstrate prejudice. *See id.* We will not presume prejudice when there is nothing in the record to indicate what impression may have been made on the jurors or where the appellant did not offer any proof of prejudice. *See id.*

In *Williams*, this court determined that the trial court did not abuse its discretion in permitting the defendant to be shackled in the presence of the jury where he had a long criminal past; he was currently on trial for capital murder, aggravated robbery, theft, and escape; and he had threatened and taunted victims at a previous trial, which resulted in an altercation that required officers to carry the defendant from the courtroom. The court added that "[i]t would be difficult to imagine a criminal defendant that would better fit the definition of a high-risk defendant" and concluded that, in this situation, the restraints were necessary to maintain order in the courtroom. *Id.* at 747–48, 67 S.W.3d at 560.

In the instant case, Britton was already wearing a stun belt underneath his clothing during the second day of trial, the same day he caused the disruption. The circuit court had gone so far as to remind him of its presence that morning before trial began and what would happen should he not control himself. Even with that safety measure in place, Britton attempted to verbally and physically attack a witness who was leaving the stand. It took multiple courtroom deputies to restrain him and remove him from the courtroom after the outburst. It is clear from these facts that the decision to require additional restraints was reasonably necessary to maintain order for the remainder of the trial. As previously noted, the circuit court admonished the jury after the incident that Britton still sat before them with the presumption of innocence and that his conduct could not be considered in determining if he was guilty or not of the current charges.

To conclude, Britton's own conduct brought about the need for the restraints, and he was not denied his right to a fair trial. We cannot say that the circuit court abused its

discretion in determining that the restraints were reasonably necessary to maintain order and security in the courtroom.

*Arkansas Supreme Court Rule 4-3(i)*

In the instant case, Britton received a sentence of life in prison without parole. Pursuant to Arkansas Supreme Court Rule 4–3(i) (2013), the record has been reviewed for all objections, motions, and requests that were decided adversely to Britton, and no prejudicial error has been found.

Affirmed.

*Janice W. Vaughn*, Arkansas Public Defender Commission, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.