Cite as 2025 Ark. App. 196

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-24-418

|  |  |
|---|---|
| WILLVONTAE WESTMORLAND <br> APPELLANT <br><br> V. <br><br> STATE OF ARKANSAS <br> APPELLEE | Opinion Delivered April 2, 2025 <br><br> APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. 47BCR-21-139] <br><br> HONORABLE SCOTT A. ELLINGTON, JUDGE <br><br> AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Willvontae Westmorland appeals a sentencing order of the Mississippi County Circuit Court entered after a jury trial convicting him of first-degree murder, committing a terroristic act, and using a firearm to commit those crimes. He was sentenced to an aggregate term of thirty-five years' imprisonment, including consecutive sentences of twenty years for first-degree murder, ten years for terroristic act, and five years for using a firearm. On appeal, Westmorland challenges the circuit court's (1) denial of his motion for directed verdict, (2) denial of his *Batson* challenge, (3) denial of his motion for mistrial, (4) refusal to give his causation instruction, and (5) requirement that he and his codefendants wear ankle monitors during the trial. We affirm Westmorland's convictions.

On April 7, 2021, Westmorland, Tyree Johnson, and Joel Williams engaged in a gunfight in a Blytheville neighborhood with the occupants of a black BMW that resulted in the death of Jamion Sims, one of the BMW's occupants. At a joint trial for Westmorland, Johnson, and Williams, video evidence from a home in the neighborhood and a SkyCop camera established that at 4:06 p.m., they parked their car, a black Infiniti, behind the home of Wenzly Henry. Henry's home was at 600 Walls Street at the intersection of Myrtle and Walls Streets. There were video cameras on each side of Henry's home. Video from one of the cameras showed Westmorland and his codefendants park and get out of the car, leaving the car doors open; arm themselves; and walk around near the car. Three minutes later, a black BMW driven by Sims pulled up in front of Henry's home, and four armed men got out. Westmorland and his codefendants immediately began firing toward them from the corner of Henry's residence. The other men returned fire. Video evidence showed Westmorland, Johnson, and Williams running to and from the Infiniti toward the BMW with firearms. As the BMW continued down the street, Westmorland and his codefendants continued firing at it from the driver's side of the street. Although the shootout lasted less than one minute, police later discovered seventy-three shell casings at the scene.

Officer Michael Dannar of the Blytheville Police Department, responding to reports of gunfire in the area, saw three men clustered around a black BMW moving away from the gunfight but still exchanging fire with Westmorland and his codefendants. The officer said that the BMW was headed away from where the shooting occurred, and he rammed it with his car to stop its escape. He detained the shooters who were in the BMW. After additional

officers arrived on the scene to assist Officer Dannar, one of the occupants of the BMW told Dannar that the driver of the BMW had been shot. Dannar approached the BMW and discovered the driver, Jamion Sims, "slumped over the steering wheel" with a fatal gunshot wound in the back of his head. Westmorland and his codefendants ran from the scene when the police arrived but were later identified and arrested.

Westmorland, Johnson, and Williams were tried together in a four-day jury trial in January 2024.[1] Westmorland was convicted of first-degree murder, committing a terroristic act, and using a firearm to commit those crimes and was sentenced to an aggregate term of thirty-five years' imprisonment.

## I. *Sufficiency of the Evidence*

For his first point on appeal, Westmorland argues that the circuit court erred in denying his motion for directed verdict. Specifically, he contends that there was insufficient evidence of causation because there was no evidence that he or any of his codefendants fired the shot that killed Sims. He also claims that the State failed to negate his justification defense beyond a reasonable doubt. When sufficiency of the evidence is challenged on appeal, we consider only the proof that supports the verdict. *Otey v. State*, 2025 Ark. App. 64, at 4. We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the State. *Id.* We will affirm if the finding of guilt is supported by

---

[1]Johnson and Williams appeal their convictions in separate appeals also handed down today. *See Johnson v. State*, 2025 Ark. App. 198, ___ S.W.3d ___; *Williams v. State*, 2025 Ark. App. 194, ___ S.W.3d ___.

substantial evidence. *Id.* Evidence is substantial if it is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without requiring resort to speculation or conjecture. *Id.* The weight of the evidence and credibility of the witnesses are matters for the fact-finder, not for the circuit court on a directed-verdict motion or this court on appeal. *Id.*

Westmorland was convicted of felony murder, which requires the State to prove the following:

(1) Acting alone or with one (1) or more other persons:

(A) The person commits or attempts to commit a felony; and

(B) In the course of and in the furtherance of the felony or in immediate flight from the felony, the person or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life[.]

Ark. Code Ann. § 5-10-102(a) (Repl. 2024). The underlying felony for Westmorland's murder conviction was committing a terroristic act, which a person commits if, "while not in the commission of a lawful act, the person . . . [s]hoots at or in any manner projects an object at a conveyance which is being operated or which is occupied by another person with the purpose to cause injury to another person or damage to property[.]" Ark. Code Ann. § 5-13-310(a)(1) (Repl. 2024). A person acts purposely with respect to his conduct when it is his conscious object to engage in conduct of that nature or to cause that result. Ark. Code Ann. § 5-2-202(1) (Repl. 2024). In criminal matters, "[c]ausation may be found when the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause unless: (1) [t]he concurrent cause was clearly sufficient to

4

produce the result; and (2) [t]he conduct of the defendant was clearly insufficient to produce the result." Ark. Code Ann. § 5-2-205 (Repl. 2024). One whose wrongdoing is a concurrent proximate cause of an injury is criminally liable the same as if his wrongdoing were the sole proximate cause of the harm done. *Brown v. State*, 2021 Ark. 16, at 2, 614 S.W.3d 820, 822.

Westmorland first argues that there was no evidence that he fired the shot that killed Sims. However, the State was not required to prove that Westmorland shot the bullet that hit and killed Sims. The State's theory in this case was that the codefendants were accomplices. A person is criminally liable for the conduct of another person when he is the accomplice of another person in the commission of an offense. Ark. Code Ann. § 5-2-402(2) (Repl. 2024). When two persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Cook v. State*, 350 Ark. 398, 409, 86 S.W.3d 916, 923 (2002). Arkansas law makes no distinction between the criminal liability of a principal and an accomplice. *Winters v. State*, 2013 Ark. 193, at 12, 427 S.W.3d 597, 605.

Here, a bullet from the gunfight hit Sims and killed him. The evidence presented was that the bullet was fired from more than three feet away and entered Sims's head from the left side. The evidence showed that Westmorland, acting with Johnson and Williams, shot at the BMW and its occupants from Sims's left side. The occupants of the BMW were shooting away from the BMW and toward Westmorland and his codefendants. Video also showed Westmorland and his codefendants shooting at the BMW and its occupants while the BMW was driving away. Substantial evidence supports the jury's conclusion that in the

5

course and furtherance of shooting at the BMW and its occupants, Westmorland or one of his codefendants caused Sims's death.

Westmorland also argues that the State failed to negate his justification defense. Specifically, he contends that he acted reasonably in self-defense when a group of heavily armed men in a BMW sped down the block, got out of the car, and started shooting at him and his two friends. At the time of the murder, the law provided that a person is justified in using deadly physical force upon another person if the person reasonably believes that the other person is committing or about to commit a felony involving force or violence or is using or about to use unlawful deadly physical force. Ark. Code Ann. § 5-2-607(a)(1)–(2) (Supp. 2019). The statute provided, however, that a person may not use deadly physical force in self-defense if the person knows that he or she can avoid the necessity of using deadly physical force by retreating. *Id.* § 5-2-607(b)(1)(A). A person is not required to retreat if the person is unable to retreat with complete safety. *Id.* § 5-2-607(b).

Justification is a matter of intent and a question of fact for the jury. *Humphrey v. State*, 332 Ark. 398, 409, 966 S.W.2d 213, 219 (1998). The jury determines not only the credibility of witnesses but also the weight and value of their testimony. *E.g.*, *Luper v. State*, 2016 Ark. 371, at 6, 501 S.W.3d 812, 817. Moreover, the jury is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Brunson v. State*, 368 Ark. 313, 317, 245 S.W.3d 132, 136 (2006).

The evidence showed that Westmorland and his codefendants, who were concealed behind Henry's house when the BMW traveled down Walls Street, did not remain behind

6

the house or retreat. Rather, they ran from behind the house toward the BMW and engaged in a gunfight with the occupants who got out of the BMW. Further, Westmorland and his codefendants continued to advance and fire their weapons as the BMW drove away. The jury was instructed on self-defense but chose not to accept the defense. On review of the denial of a motion for directed verdict, this court need only consider that evidence that supports the guilty verdict, and irrespective of Westmorland's evidence of justification, this court concludes that the proof of his guilt is substantial. *Williams v. State*, 321 Ark. 635, 640, 906 S.W.2d 677, 681 (1995).

## II. Batson *Challenge*

Westmorland next argues that the circuit court erred by denying his peremptory challenge to a prospective juror under *Batson v. Kentucky*, 476 U.S. 79 (1986). The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution "prohibits all forms of purposeful racial discrimination in selection of jurors." *Id.* at 88. A prosecutor may not use a peremptory challenge to exclude potential jurors because of their race. *Jackson v. State*, 375 Ark. 321, 334, 290 S.W.3d 574, 584 (2009). On appeal, we will reverse a circuit court's ruling on a *Batson* challenge only when the circuit court's findings of fact are clearly against the preponderance of the evidence. *Severance v. State*, 2024 Ark. App. 87, at 21, 684 S.W.3d 610, 623. In making *Batson* rulings, an appellate court accords some measure of deference to the circuit court since the circuit court is in a superior position to make the determinations because it has the opportunity to observe the parties and jurors and determine their credibility. *Id.* at 21–22, 684 S.W.3d at 624.

7

The opponent of the peremptory strike must present a prima facie case of purposeful discrimination by showing (1) that the strike's opponent is a member of an identifiable racial group, (2) that the strike is part of a jury-selection process or pattern designed to discriminate, and (3) that the strike was used to exclude jurors because of their race. *Id.* at 20, 684 S.W.3d at 623. The burden then shifts to the proponent of the strike to produce a race-neutral explanation for the strike. *Jackson*, 375 Ark. at 335, 290 S.W.3d at 584. The explanation must be more than a mere denial of discrimination, but it need not be persuasive or even plausible, and "it may be silly or superstitious." *MacKintrush v. State*, 334 Ark. 390, 398, 978 S.W.2d 293, 296 (1998). Finally, the circuit court must then decide whether the opponent of the strike has demonstrated purposeful discrimination. *Id.* at 399, 978 S.W.3d at 296. The burden of persuasion never shifts from the opponent of the strike. *Id.* at 398, 978 S.W.3d at 296.

This is the colloquy that prompted the peremptory strike:

| | |
|---|---|
| PROSECUTOR: | What about you, Mr. Wilson? If we prove the elements of the case beyond a reasonable doubt, could you find the defendants guilty? |
| PROSPECTIVE JUROR: | If I have to, yes. |
| PROSECUTOR: | You say if you have to, yes. What does that mean? |
| PROSPECTIVE JUROR: | I don't know. |
| PROSECUTOR: | Is it kind of like, I really don't want to have to do this, but if I got to do this — |
| PROSPECTIVE JUROR: | Yeah. |

| | |
|---|---|
| PROSECUTOR: | Gotcha. But again, let's say you make the jury. And let's say, hey, you're charged with making that decision. If we prove the case beyond a reasonable doubt, could you find them guilty? |
| PROSPECTIVE JUROR: | Probably. |
| PROSECUTOR: | Probably? Could you do it? If we make our case beyond a reasonable doubt, could you find them guilty? |
| PROSPECTIVE JUROR: | Mm-hmm. |

When asked by the court to provide a race-neutral reason for the challenge, the prosecutor replied, "I'm African-American, prosecuting the case. And his - - what he stated was, he tried to say, look. I can do it. But at one point, he did state that, no. I couldn't do that. I couldn't follow the law. And so, at that point - - that waffling? No." The court stated that it had made notes during voir dire that the potential juror was "not excited about being here," that the prosecutor had asserted a race-neutral reason for excusing the juror, and that the court would excuse him. After excusing the juror, the court noted that the lead prosecutor for the case was African American.

The prosecutor provided a race-neutral reason for the strike—waffling; defense counsel presented no relevant evidence to counter the reason; and the colloquy demonstrates that the prospective juror was reluctant about participating, at best. Even if the juror acknowledged that he probably could follow the law, a prosecutor's explanation for a peremptory strike need not rise to the level justifying a strike for cause. *Batson*, 476 U.S. at 97. Giving due deference to the circuit court's superior position and opportunity to observe

the parties and jurors and determine their credibility, we hold that its decision that the juror was not being excused out of purposeful discrimination is not clearly against the preponderance of the evidence.

Westmorland, quoting *United States v. Rutledge*, 648 F.3d 555, 562 (7th Cir. 2011), also contends that the circuit court's recognition of the prosecutor's race constituted legal error and that a judge may not "assume that a prosecutor of the same race as a juror would not engage in discrimination against that juror simply because of their shared race." Neither Westmorland nor his codefendants made this argument in the circuit court; thus, it is not preserved for our review. *Green v. State*, 365 Ark. 478, 502, 231 S.W.3d 638, 656–57 (2006) (holding that a party cannot change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial). Even if the argument had been preserved for appeal, it is without merit. The court found that there was a race-neutral reason for the strike after listening to the State's explanation for its strike and consulting its own notes from voir dire. The court's passing recognition of the prosecutor's own acknowledgement of his race after it had ruled on the challenge was not part of its ruling.

### III. *Motion for Mistrial*

Westmorland contends that the circuit court abused its discretion and violated his due-process rights by denying his motion for mistrial and permitting the State to present inconsistent theories. He cites *Green v. State*, 2012 Ark. 347, 423 S.W.3d 62, for the principle that a due-process violation occurs when the State uses inherently factually contradictory theories to secure convictions against two or more defendants in prosecutions for the same

10

offenses arising out of the same event. Specifically, he argues that the State alleged in its closing argument that the men in the BMW "did nothing wrong," portraying them as "victims," while simultaneously prosecuting them in a separate case for their conduct during the incident.

A mistrial is a drastic remedy and should be declared only when there has been an error so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected. *Tate v. State*, 367 Ark. 576, at 580–81, 242 S.W.3d 254, 259 (2006); *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000). The circuit court has wide discretion in granting or denying a motion for mistrial, and absent an abuse of that discretion, we will not reverse its decision on appeal. *Stover v. State*, 2014 Ark. App. 393, at 5, 437 S.W.3d 695, 699.

Here, there was no evidence presented that the men in the BMW had been brought to trial. Until the other perpetrators are tried, there is no theory for the State to factually contradict or compare with the theory argued against Westmorland and his accomplices. *Green*, 2012 Ark. 347, at 5, 423 S.W.3d at 66. Any alleged theory of the case the State might bring against the additional perpetrators is speculative. The circuit court did not abuse its discretion in denying the motion for mistrial.

IV. *Causation Instruction*

Westmorland argues that the circuit court erred in denying a jury instruction regarding causation. Johnson proffered Arkansas Model Instruction–Criminal 2d 603, which provides that "[c]ausation exists when the result would not have occurred except for

11

the conduct of [defendant] operating either alone or together with another cause, unless the other cause was clearly sufficient to produce the result and the conduct of [defendant] was clearly insufficient by itself." Westmorland claimed that due to the number of shooters, bullets, and weapons, in conjunction with a lack of evidence from the autopsy directly implicating any of the codefendants, the instruction was warranted. The circuit court rejected the instruction, reasoning that it did not want to "cloud" the issue given the State's pursuit of charges against the defendants as accomplices and that the felony-murder rule implicated everyone involved—"they all showed up to have a gunfight."

A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Grubbs v. State*, 2020 Ark. 42, at 4, 592 S.W.3d 688, 691. It is not erroneous for the circuit court to refuse to give a proffered instruction if other instructions adequately covered the issue. *Id.* at 4, 592 S.W.3d at 691. We will not reverse the circuit court's decision to give or reject an instruction unless the court abused its discretion. *Kinsey v. State*, 2016 Ark. 393, at 9, 503 S.W.3d 772, 778. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Anderson v. State*, 2023 Ark. App. 397, at 4, 675 S.W.3d 453, 456. Additionally, absent a showing of prejudice, we will not reverse. *Finfrock v. State*, 2017 Ark. App. 90, at 2, 514 S.W.3d 483, 484.

The court gave the jury AMI Crim. 2d 401 regarding accomplice liability:

12

In this case, the State does not contend that the defendants each acted alone in the commission of the offenses charged. A person is criminally responsible for the conduct of another person when he is an accomplice in the commission of an offense.

An accomplice is one who directly participates in the commission of an offense or who, with the purpose of promoting or facilitating the commission of an offense: Solicits, advises, encourages, or coerces the other person to commit the offense; or aids, agrees to aid, or attempts to aid the other person in planning or committing the offense.

The circuit court reviewed the defendants' proposed instruction, entertained arguments from counsel, analyzed the evidence, and then rejected the instruction because the defendants were being charged with felony murder, which, in this case, required the State to prove that Westmorland or an accomplice caused the death of any person in the course of and in the furtherance of committing a terroristic act. As reasoned by the court, multiple defendants were charged with Sims's death. Pursuant to accomplice-liability law, the State was not required to prove who fired the fatal shot. Giving AMI Crim. 2d 603 would have confused that point of law. As explained in *Purifoy v. State*, 307 Ark. 482, 491–92, 822 S.W.2d 374, 379 (1991), "[s]ince appellant bases his causation argument solely on the erroneous proposition that he cannot be held liable for his accomplice's actions, we find no evidence to support a causation instruction." The circuit court did not abuse its discretion.

V. *Ankle Monitor*

Westmorland argues that the circuit court abused its discretion by forcing him to wear an ankle monitor during his trial, signaling to the jury that he was so dangerous he needed to have an ankle monitor even when in court and surrounded by numerous law enforcement officers and guards. He cites Rule 33.4, which provides that defendants "shall

not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order." Ark. R. Crim. P. 33.4 (2024).

At the pretrial hearing, Williams's counsel raised a "housekeeping issue," noting that all the defendants were wearing ankle monitors and were attempting to "[come] up with a solution" to prevent exposing that fact to the jury. In response, the circuit court recommended that they wear long pants and asked if counsel had any authority that wearing an ankle monitor would prejudice the jury. Williams's counsel said he had no such authority, and Westmorland's counsel said he did not either and thought the issue was whether the defendants were in custody or under some restraint. Johnson's counsel said that he had "a pending motion about that" and cited Rule 33.4. The court noted that the defendants were out on bond and in street clothes and again recommended long pants to conceal the monitors.

On appeal, Westmorland presents no authority that an ankle monitor is a "physical restraint" governed by Rule 33.4. And we do not consider arguments when an appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Britton v. State*, 2014 Ark. 192, at 11, 433 S.W.3d 856, 863.

Moreover, assuming an ankle monitor is a restraint, there is no evidence on this record that the jury could see Westmorland's ankle monitor or knew that he was wearing one. Therefore, he has failed to show how he was prejudiced by the ankle monitor. *Britton*, 2014 Ark. 192, at 11, 433 S.W.3d at 863 (holding that restraints are not per se prejudicial

14

and that a defendant must affirmatively demonstrate prejudice: "We will not presume prejudice when there is nothing in the record to indicate what impression may have been made on the jurors or where the appellant did not offer any proof of prejudice."). Accordingly, we hold that the circuit court did not abuse its discretion.

Affirmed.

TUCKER and MURPHY, JJ., agree.

*Sharon Kiel*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.