Cite as 2025 Ark. App. 198

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-24-425

| | |
|---|---|
| | Opinion Delivered April 2, 2025 |
| TYREE D. JOHNSON | |
| APPELLANT | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT |
| V. | [NO. 47BCR-21-140] |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE SCOTT A. ELLINGTON, JUDGE |
| | AFFIRMED |

## MIKE MURPHY, Judge

Appellant Tyree Johnson appeals his conviction by a Mississippi County jury of committing first-degree murder and a Class B terroristic act. His sentence was enhanced because he used a firearm, and Johnson was sentenced to a total thirty-five years' imprisonment in the Arkansas Division of Correction. He makes six points on appeal: (1) substantial evidence does not support the conviction; (2) the circuit court erred in denying his proffered jury instruction; (3) the circuit court erred in denying his *Batson* challenge; (4) the circuit court erred in denying his motion to be free from restraints at trial; (5) his due-process rights were violated by the State's use of inconsistent theories of prosecution; and (6) the State violated his right to be free from double jeopardy.

### I. *Facts at Trial*

On April 7, 2021, Johnson; Joel Williams, Jr.; and Willvontae Westmorland were

milling around a black Infiniti sedan they had backed between two houses near 600 Walls Street in Blytheville. Surveillance video showed that for about three minutes, they walked around and removed weapons from the car. None of them lived at either of the houses, though Williams did live across the street. One of the trio had an assault rifle, and they all appeared to be watching Walls Street.

About three minutes after they parked, a BMW driven by Jamion Sims came down Walls Street. There were four men riding in the BMW with Sims. One man carrying an assault weapon jumped or fell out of the BMW just before the car stopped near where Johnson, Williams, and Westmorland were standing with their weapons. Seconds later, three more armed men get out of the BMW and start running toward the house. Home surveillance footage showed Johnson, Williams, and Westmorland running to meet them. Video showed the men firing at each other while ducking between houses and behind cars. The BMW continued to slowly roll down the street while Johnson, Williams, and Westmorland continued firing at it. They fled before the police arrived. The gunfire lasted only about a minute, but seventy-three shell casings were ultimately recovered.

Lieutenant Dannar, who received the call about shots fired, was the first officer on the scene. When he arrived, he saw two or three men near a BMW firing semiautomatic weapons. When the men saw him, some of them ran to try and get into the BMW. Lieutenant Dannar rammed the BMW with his police car to stop it and was then able to hold three men (neither appellant nor his codefendants) at gunpoint until backup arrived.

The only fatality was Sims, the driver of the BMW, who never got out of his car. He

died from a single gunshot wound to his head. It entered from the left and exited from the right with a slightly front-to-back trajectory. The medical examiner testified the shot was fired from a distance greater than three feet. Johnson and his associates were on the driver's side of the car when the exchange began, and there were concentrated groups of shell casings near where surveillance footage showed Johnson, Williams, and Westmorland had been standing.

## II. *Procedural Matters*

Johnson, Williams, and Westmorland were all tried together at a three-day jury trial in January 2024.[1] Before trial, Johnson moved to appear without his ankle monitor. Defense counsel could not cite any specific authority holding that an ankle monitor is prejudicial. The court considered and then denied the motion, reasoning that an ankle monitor is not a restraint like handcuffs or shackles, and the defendants could wear long pants to hide it. The court stated the monitor shouldn't be noticeable unless attention was drawn to it.

Also relevant to this appeal, during jury selection, the State asked the potential jurors whether they could find the defendants guilty if the State met its burden of proof beyond a reasonable doubt. Douglas Wilson, a potential juror, responded, "If I have to, yes." The prosecutor asked what Wilson meant by that answer, and Wilson replied, "I don't know," and when later asked again if he could find the defendants guilty if the State made its case,

---

[1] Williams and Westmorland appeal their convictions in separate appeals also handed down today. *See Williams v. State*, 2025 Ark. App. 194, ___ S.W.3d ___; *Westmorland v. State*, 2025 Ark. App. 196, ___ S.W.3d ___.

he replied, "Probably." The State used a peremptory strike, which Williams's counsel challenged, seeking a race-neutral basis. The prosecutor said that it was Wilson's "waffling" response, and the circuit court upheld the peremptory strike.

After the close of all the evidence at the jury-instruction conference, Johnson proffered Arkansas Model Instruction–Criminal 2d 603 concerning causation, arguing it was warranted given the circumstances. That instruction tells the jury that the State must prove that Johnson or his codefendants caused Sims's death. Defense counsel gave the autopsy results and bullet trajectory as examples of why the instruction was necessary, but the court rejected the instruction, stating that all the people shooting that day (Johnson, Westmorland, Williams and the occupants of the BMW) should be considered accomplices for the purpose of the felony-murder rule. The court explained that everyone appeared to be willing participants in a gunfight, and therefore, their individual roles were not necessarily relevant to their culpability.

After the State rested its case, Johnson moved for a directed verdict on all charged counts and enhancements, citing insufficient evidence, which the circuit court denied. Johnson then presented evidence that one of the BMW's occupants possessed a bulletproof vest. Additionally, Johnson's mother testified that she lived on the corner of Myrtle and Walls Streets and that codefendant Williams lived directly across from where the Infiniti was parked. Johnson renewed his motion for a directed verdict, which the circuit court again denied.

The next issue arose during the State's closing argument. The State remarked that

while being armed was not unlawful, Johnson, Westmorland, and Williams had initiated the gunfight that caused Sims's murder. After the State concluded, Johnson moved for a mistrial, arguing it was inconsistent for the State to suggest that he and his codefendants were the initial aggressors while also pressing charges against the BMW's occupants following the shooting. This motion was denied.

The jury found Johnson guilty of all counts and enhancements as charged. After the verdict was announced, Johnson made the following objections. First, he objected to the stacking of enhancements, arguing it violated his right to due process. Second, he objected to the prosecution of terroristic acts as a predicate offense for felony murder, claiming it violated his right to be free from double jeopardy. Finally, he challenged the State's maintaining inconsistent theories of prosecution as a violation of his substantive due-process rights. The court denied these posttrial motions. Johnson was sentenced to an aggregate thirty-five years' imprisonment and now appeals.

III. *Motions for Directed Verdict*

This court treats a directed-verdict motion as a challenge to the sufficiency of the evidence. *Taylor v. State*, 2010 Ark. 372, at 11, 372 S.W.3d 769, 776. In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion beyond suspicion or conjecture. *Id.* We view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*

Johnson was charged with first-degree murder pursuant Ark. Code Ann. § 5-10-102(a)(1) (Supp. 2019). Under this statute, a person commits murder in the first degree if, acting alone or with one or more persons, the person commits or attempts to commit a felony, and in the course of and in furtherance of or in immediate flight from the felony, the person or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-102(a)(1)(A)–(B).

Johnson's felony-murder charge was predicated on the theory that he or one of his accomplices unlawfully committed or attempted to commit a terroristic act causing Sims's death. A terroristic act includes unlawfully shooting at a vehicle being driven or occupied by someone with the purpose to cause injury or property damage. Ark. Code Ann. § 5-13-310 (Repl. 2013).

A. Justification

Johnson first argues that the State failed to present sufficient evidence that he committed a terroristic act, thereby also failing to establish the basis for the felony-murder conviction. Johnson explains that the first element of a terroristic act requires that the accused was not acting lawfully. Johnson states that he and his accomplices were justified in shooting at the BMW because they reasonably believed that they were about to be victims of aggravated assault, and deadly physical force was imminent.

A person is justified in using deadly physical force against another person if he reasonably believes that the other person is (1) committing or about to commit a felony involving force or violence; (2) using or about to use unlawful deadly physical force; or (3)

6

imminently endangering the person's life. A person may not use deadly force in self-defense if the person knows he can avoid the necessity of using deadly force by retreating. Ark. Code Ann. § 5-2-607(b)(1)(A) (Supp. 2019). That said, retreat is not required if it cannot be done in complete safety, and it is not required in one's own dwelling or the dwelling's curtilage so long as the person asserting the defense was not the original aggressor. *Id.* § 5-2-607(b)(1)(B)(i)–(ii). A person is justified if he can show the victim was the aggressor and the accused used all reasonable means within his power and consistent with his safety to avoid the use of deadly force; critical to this inquiry is the reasonableness of the accused's apprehension that he was in danger of death or great bodily harm. *Severance v. State*, 2024 Ark. App. 87, at 13, 684 S.W.3d 610, 619.

Justification is a matter of intent and a question of fact for the jury. *Humphrey v. State*, 332 Ark. 398, 409, 966 S.W.2d 213, 219 (1998). The jury determines not only the credibility of witnesses but also the weight and value of their testimony. *E.g.*, *Luper v. State*, 2016 Ark. 371, at 6, 501 S.W.3d 812, 817. Moreover, the jury is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Brunson v. State*, 368 Ark. 313, 317, 245 S.W.3d 132, 136 (2006).

The evidence showed that Johnson and his codefendants, who were concealed behind a house when the BMW came down the street, did not remain behind the brick house or retreat. Rather, they ran from behind the house toward the BMW and engaged in a gunfight with the occupants who got out of the BMW. Further, Johnson and his codefendants continued to advance and fire their weapons as the BMW drove away from the scene. The

7

jury was instructed on self-defense but chose not to accept that theory. On review of the denial of a motion for directed verdict, this court need only consider the evidence that supports the guilty verdict, and irrespective of Johnson's evidence of justification, this court concludes the proof of his guilt is substantial. *Williams v. State*, 321 Ark. 635, 640, 906 S.W.2d 677, 681 (1995).

## B. Accomplice Liability

Johnson next argues that there was insufficient evidence to support the theory that he was an accomplice to a terroristic act.

In cases implicating a theory of accomplice liability, we will affirm if there is substantial evidence that the defendant acted as an accomplice in the commission of the alleged offense. *Finley v. State*, 2019 Ark. 336, at 2, 587 S.W.3d 223, 226. Someone can be an accomplice if he solicits, advises, encourages, or coerces the other person to commit the offense; or aids, agrees to aid, or attempts to aid the other person in planning or committing the offense. *See* Ark. Code Ann. § 5-2-403(a)(1), (2) (Repl. 2013); *Starling v. State*, 2015 Ark. App. 429, 468 S.W.3d 294.

When causing a particular result is an element of an offense, a person is an accomplice of another in the commission of an offense if, "acting with respect to that particular result with the kind of culpable mental state sufficient for the commission of the offense, the person . . . [a]ids, agrees to aid, or attempts to aid the other person in committing it." Ark. Code Ann. § 5-2-403(b)(2); *see Smith v. State*, 2022 Ark. 95.

Johnson explains that he was engaged in lawful behavior before the BMW arrived.

8

And while that may be true, it is the events that occurred once the BMW arrived that is at issue. He argues that he "engaged in evasive actions" at all times relevant to the commission of the charged offenses, and he never acted in any manner that could fairly be described as accomplice behavior. We disagree; accomplice liability can be proved with circumstantial evidence, including the defendant's proximity to a crime, opportunity to commit it, and association with a participant in the crime in a manner that suggests joint participation. *Wray v. State*, 2023 Ark. App. 465, at 9, 678 S.W.3d 431, 437. We have evidence of all three here. Johnson rode in the Infiniti with the codefendants, and surveillance videos show them retrieving weapons and watching the street before the BMW arrived. This confirms Johnson's awareness of the situation before its escalation. Johnson was armed, surveillance video showed him firing his weapon, and he fled with Williams and Westmorland when police arrived. *See id.* at 9, 678 S.W.3d at 437; *see also Stewart v. State*, 338 Ark. 608, 614, 999 S.W.3d 2d. 684, 688 (1999).

## C. Terroristic Acts

Johnson additionally contends there was not sufficient evidence to support the finding that he committed a terroristic act.

A person commits a terroristic act if, while not in the commission of a lawful act, the person shoots at or in any manner projects an object at a conveyance that is being operated or that is occupied by another person with the purpose to cause injury to another person or damage to property. Ark. Code Ann. § 5-13-310(a)(1). Johnson, who was holding a 9mm gun during the exchange of gunfire, explains that considering where the concentration of 9mm

shell casings was found, he had no clear path to shoot at the BMW from his location. Johnson's argument in this section wholly ignores that he was convicted under the theory of accomplice liability, a point we affirmed.

Johnson or, at the very least, his codefendants shot at the BMW while it was moving away from them. It stands to reason that if the BMW was moving, it was occupied. It further stands to reason that if someone is shooting a gun at an object, he intends, at a minimum, to damage the object. There were three bullet holes in the back glass of the BMW, and Sims was killed by a bullet that struck him in the back left side of his head. There is sufficient evidence to support a finding that Johnson or one of his accomplices committed a terroristic act.

D. Murder First

This leads us into Johnson's final point regarding sufficiency, which is that because the State failed to establish the elements for a terroristic act, the underlying felony for the purpose of a felony-murder analysis must also fail. Because we hold that sufficient evidence supports the finding that Johnson was, at a minimum, an accomplice to the terroristic act, his felony-murder conviction likewise stands.

As we explained above, under Arkansas Code Annotated section 5-10-102(a)(1) (Supp. 2019), a person commits first-degree murder if he or an accomplice causes the death of another in the course of or in furtherance of a felony under circumstances manifesting extreme indifference to the value of human life.

Sims was killed by a bullet that struck the back of his head. This record establishes

10

that Johnson and his codefendants actively participated in a gunfight that was the cause of Sims's death. *See, e.g., Jefferson v. State*, 372 Ark. 307, 314, 276 S.W.3d 214, 221 (2008) (holding that the defendant's decision to engage in life-threatening activity was a substantial factor in bringing about the death of victim); *see also Nichols v. State*, 2017 Ark. 129, at 6, 517 S.W.3d 404, 410 (reasoning that causation extends to all the consequences arising from a defendant's unlawful conduct). The jury could reasonably infer that the cause of Sims's death was a natural and probable consequence of Johnson's, Williams's, and Westmorland's shooting at the car Sims was driving. Substantial evidence supports the finding that Johnson or his associates committed a terroristic act, an act that also demonstrates an extreme indifference to the value of human life.

## IV. *Proffered Jury Instruction*

Johnson argues next that the circuit court erred by denying his proffered jury instruction on causation. Johnson proffered AMI Crim. 2d 603, which provides that the State must prove that Johnson caused Sims's death. Specifically, it states that "[c]ausation exists when the result would not have occurred except for the conduct of [defendant] operating either alone or together with another cause, unless the other cause was clearly sufficient to produce the result and the conduct of [defendant] was clearly insufficient by itself." The court was concerned the instruction would "cloud" the causation issue, given the State's pursuit of charges against Johnson under an accomplice theory. The court reasoned that the evidence showed everyone willingly participated in a gunfight, and the instruction would confuse the point that it was unnecessary for the State to prove who exactly fired the

11

shot that killed Sims.

We will not reverse a circuit court's decision to give or reject a jury instruction unless the court abused its discretion. *Finfrock v. State*, 2017 Ark. App. 90, at 2, 514 S.W.3d 483, 484. Abuse of discretion is a high threshold that does not simply require error in the circuit judge's decision but requires that the court acted improvidently, thoughtlessly, or without due consideration. *Id.* Nor is it erroneous for the circuit court to refuse to give a proffered instruction if other instructions adequately covered the issue. *Grubbs v. State*, 2020 Ark. 42, at 4, 592 S.W.3d 688, 691. Furthermore, absent a showing of prejudice, we will not reverse. *Id.* In determining whether the circuit court erred in refusing an instruction in a criminal trial, the test is whether the omission infects the entire trial such that the resulting conviction violates due process. *Finfrock*, 2017 Ark. App. 90, at 6, 514 S.W.3d at 487.

We agree with the circuit court's reasoning that this was not a necessary instruction given the evidence of accomplice liability. Arkansas Model Jury Instruction–Criminal 2d 401 regarding accomplices and joint responsibility was read to the jury as part of the jury instructions. That instruction explains that

> the State does not contend that defendants each acted alone in the commission of the offenses charged. A person is criminally responsible for conduct of another person when he is an accomplice in the commission of an offense.
>
> An accomplice is one who directly participates in the commission of an offense or who, with the purpose of promoting or facilitating the commission of an offense:
>
>> Solicits, advises, encourages or coerces the other person to commit the offense; or [aids], agrees to aid, or attempts to aid the other person in planning or committing the offense.

"Purpose" is then explained further in that instruction: "[a] person acts with purpose with respect to his conduct or a result thereof when it is his conscious objective to engage in conduct of that nature or to cause such a result."

The court also read AMI Crim. 2d 404 regarding mere presence. This instruction provides that if the jury finds that Johnson "was only present while a crime was being committed and did not have a legal duty to act, then he is not an accomplice." Finally, the instructions concerning the individual charges addressed causation within them as part of the elements of the offense. Arkansas Model Jury Instruction–Criminal 2d 1312 concerning a terroristic act states that "the State must prove that while not in the commission of a lawful act and with the purpose of causing injury to another person or persons, or damage to property, defendant(s) shot at a conveyance that was being operated or that was occupied by another person or persons."

The circuit court reviewed the defendants' proposed instruction, entertained arguments from counsel, analyzed the evidence, and then rejected the instruction because the defendants were being charged with felony murder, which, in this case, required the State to prove that Johnson or an accomplice caused the death of any person in the course of and in the furtherance of committing a terroristic act. The court reasoned that since multiple defendants were charged with Sims's death, under accomplice-liability law, the State was not required to prove who fired the fatal shot. Giving AMI Crim. 2d 603 would have confused that point of law. As explained in *Purifoy v. State*, 307 Ark. 482, 492, 822 S.W.2d 374, 379 (1991), "[s]ince appellant bases his causation argument solely on the erroneous proposition

13

that he cannot be held liable for his accomplice's actions, we find no evidence to support a causation instruction." The circuit court did not abuse its discretion.

## V. Batson *Challenge*

Johnson next argues that the circuit court erroneously denied his *Batson* challenge when the State used a peremptory strike to exclude Mr. Wilson, a prospective African American juror.

Pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), the State in a criminal case may not use its peremptory strikes to exclude jurors solely on the basis of race. *Nelson v. State*, 2024 Ark. 24, at 10, 683 S.W.3d 177, 187–88. Once a challenge is made, the circuit court must conduct a three-step inquiry to determine whether a *Batson* violation occurred. *McMiller v. State*, 2014 Ark. 416, 444 S.W.3d 363. First, the opponent of the peremptory strikes must present facts to make a prima facie case of purposeful discrimination. *Id.* Second, upon a showing of a prima facie case of systematic discrimination, the State is required to give a race-neutral explanation for the strikes. *Id.* Unless discriminatory intent appears in the prosecutor's explanation, the reason given will be considered race neutral. *Flowers v. State*, 362 Ark. 193, 204, 208 S.W.3d 113, 122 (2005). Third, the circuit court must decide whether the opponent of the strike has proved purposeful discrimination. *McMiller*, *supra*. On appeal, we will not reverse a circuit court's findings on a *Batson* objection unless the decision is clearly against the preponderance of the evidence. *Id.* Some deference is accorded the circuit court in making this decision because it has the opportunity to observe the parties and determine their credibility. *Nelson*, *supra*.

14

Potential juror Wilson replied in a noncommittal, indecisive manner to the following direct question by the State: "What about you, Mr. Wilson? If we prove the elements of the case beyond a reasonable doubt, could you find the defendants guilty?" He said he "probably" could. When asked to provide a race-neutral reason for the strike, the prosecutor noted Wilson's response to this question, which the circuit court accepted. Given the record of this exchange, a preponderance of the evidence supports the circuit court's conclusion that the prosecutor's explanation was not merely pretextual. We affirm on this point.

## VI. *Ankle Monitor*

Johnson's fourth point on appeal is that the circuit court erred in denying his motion to appear at trial without his ankle monitor. He claims the obtrusive ankle monitor protruded through his pants cuff and caused him prejudice and, prior to that, inhibited his ability to consult with his Little Rock-based counsel (Johnson resided in Jonesboro). Johnson's motion was made pursuant to Rule 33.4 of the Arkansas Rules of Criminal Procedure, which provides that

> [d]efendants and witnesses shall not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order. If the trial judge orders such restraint, he shall enter into the record of the case the reasons therefor. Whenever physical restraint of a defendant or witness occurs in the presence of jurors trying the case, the judge shall upon request of the defendant or his attorney instruct the jury that such restraint is not to be considered in assessing the proof and determining guilt.

That said, it is not prejudicial per se when the defendant is brought into a courtroom handcuffed or leg-cuffed. *Townsend v. State*, 308 Ark. 266, 824 S.W.2d 821 (1992). The circuit court has discretion to use physical restraints on a defendant for security purposes

15

and to maintain order in the courtroom. *Woods v. State*, 40 Ark. App. 204, 846 S.W.2d 186 (1993). Moreover, the circuit court is in a better position to evaluate the potential security risks involved. *Id.*

On appeal, Johnson does not present any authority that an ankle monitor is a "physical restraint" governed by Rule 33.4. We will not consider arguments when an appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Britton v. State*, 2014 Ark. 192, at 11, 433 S.W.3d 856, 863.

Moreover, assuming an ankle monitor is a restraint, there is no evidence on this record that the jury could see Johnson's ankle monitor or knew that he was wearing one. Therefore, he has failed to show how he was prejudiced by the ankle monitor. *Id.*, 433 S.W.3d at 863 (holding that restraints are not per se prejudicial and that a defendant must affirmatively demonstrate prejudice: "We will not presume prejudice when there is nothing in the record to indicate what impression may have been made on the jurors or where the appellant did not offer any proof of prejudice.). Nor has Johnson explained how his monitor kept him from consulting with counsel or what he would have communicated had he not been so "inhibited."

Because Johnson has not explained how he was prejudiced by the ankle monitor beyond the conclusory statement that he was, we hold that the circuit court did not abuse its discretion when it denied Johnson's motion to remove the monitor during trial. We affirm this point.

## VII. *Inconsistent Theories of Prosecution*

As his fifth point on appeal, Johnson claims that he was entitled to a mistrial because the State impermissibly asserted inconsistent theories of prosecution.

In *Smith v. Groose*, 205 F.3d 1045 (8th Cir. 2000), the Eighth Circuit held that a due-process violation occurs when the State uses inherently factually contradictory theories to secure convictions against two or more defendants in prosecutions for the same offenses arising out of the same event. Johnson contends that the circuit court erred by denying his mistrial motion because it was inherently contradictory to suggest he and his codefendants were guilty when the BMW's four occupants also had been charged in connection with Sims's murder.

Johnson explains that the State charged him and his codefendants with first-degree murder under a felony-murder theory with committing a terroristic act as the predicate offense. Nearly contemporaneously, the State also allegedly charged the four BMW passengers with first-degree murder for Sims's death under a felony-murder theory with aggravated assault as the predicate felony. We disagree with Johnson's argument for two reasons.

First, the theories are not inherently factually contradictory. Each group was charged with felony murder on the basis of separate, independent underlying felonies. Both groups were engaged in inherently dangerous activities under both theories of prosecution; Sims's death resulted from the crossfire, and the felony-murder rule can be applied to each group separately. The theories are not diametrically opposed: they are, in fact, complementary. The

17

government's fundamental interest in criminal prosecution is that justice shall be done. *Smith, supra*. The issue in *Smith* was that the prosecution presented completely different narratives in separate trials. What it claimed to be true in one case it rejected in another, and vice versa. The manipulation of evidence was fundamentally unfair. That is simply not the case here.

Second, at the time of Johnson's trial, the BMW occupants, as best we can tell from the record, had not yet been tried. In *Green v. State*, our supreme court explained that a defendant cannot assert a due-process violation on the basis of inconsistent theories of prosecution without there already having been a trial where the alleged inconsistent theory was applied. 2012 Ark. 347, at 4, 423 S.W.3d 62, 66 ("For the purposes of this appeal, the State's theory in Billy's case no longer existed when Billy's case was reversed and remanded. Thus, when Chad filed his Motion to Prohibit the Prosecution from Arguing Contradictory Theories of the Case, there was no longer a theory in Billy's case for the State to "contradict" in Chad's case.").

A mistrial is an extreme and drastic remedy that is warranted only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *Reed v. State*, 2024 Ark. App. 459, at 3. The decision whether to grant a mistrial is left to the sound discretion of the circuit court, which is in better position to evaluate the impact of potential prejudice. *Richmond v. State*, 302 Ark. 498, 501–02, 791 S.W.2d 691, 693–94 (1990). On this record, the circuit court did not abuse its discretion in denying Johnson's motion for a mistrial on the point of inconsistent theories.

## VIII. *Double Jeopardy*

Finally, Johnson argues that one single instance of conduct—the alleged commission of a terroristic act—has subjected him to four punishments in violation of the Double Jeopardy Clause.

Johnson was sentenced to twenty years for first-degree murder, ten years for the commission of a terroristic act, and five years for a firearm enhancement, and the terroristic-act count was enhanced by one classification for acting in concert with two or more persons under Arkansas Code Annotated section 5-74-108 (Repl. 2016). Johnson's counsel acknowledges that the arguments he makes in this section are settled law in Arkansas and asks us to reconsider previous decisions and overrule decisions made by the Arkansas Supreme Court. We are a court of error, and we lack the authority to overrule decisions of the Arkansas Supreme Court; therefore, we decline Johnson's invitation to do so now. *Flores v. State*, 87 Ark. App. 327, 332, 194 S.W.3d 207, 210 (2004). The circuit court was correct in denying Johnson's motion regarding the enhancements and double-jeopardy arguments.

Affirmed.

TUCKER and WOOD, JJ., agree.

*Thopson & Holmes*, by: *Jake Holmes*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.